OPINION
This matter presents a delayed appeal from a decision rendered by the Belmont County Common Pleas Court, accepting the guilty plea offered by defendant-appellant, Buddy Joe Baier and finding him guilty of rape, in violation of R.C. 2907.02 (A) (1) and felonious sexual penetration, in violation of R.C. 2907.12 (A) (1), along with his subsequent sentencing thereon.
On May 7, 1997, appellant was indicted on one count of rape and one count of felonious sexual penetration. The indictment alleged that these violations occurred between January 1, 1990 and January 1, 1992.
Count One was based on the allegation that appellant forced his minor step-daughter to have sexual intercourse and perform oral sex on him on various occasions, threatening to kill her if she revealed his actions. The victim's mother, Molly Baier, was also alleged to have performed sexual acts on the victim who was less than thirteen years old at the time of the rape.
Count Two was based on the allegation that appellant forcefully penetrated the vagina of his other step-daughter with a candle. The second victim was born on March 25, 1980, 50 she was also less than thirteen years old at the time of the occurrence.
Although on July 14, 1997, appellant was going to plead guilty, the plea hearing was continued as it seemed that appellant was under the influence of a combination of sleeping pills and Zoloft, an antidepressant. (Plea Tr. 6). The plea hearing was rescheduled for July 21, 1997, at which time appellant pled guilty to both rape and felonious sexual penetration. In return, the plaintiff-appellee, State of Ohio removed from the indictment allegations that force was used in the sexual violations. However, because the victims were less than thirteen years old, the crimes remained first-degree felonies.
On August 7, 1997, appellant was sentenced to an indefinte incarceration term of not less than ten years nor more than twenty-five years on each count, to run consecutively. Appellant then filed a motion for a delayed appeal with this court on January 30, 1998. We subsequently sustained appellant's motion and granted him leave to appeal pursuant to App.R. 5 (E).
Appellant's sole assignment of error on appeal alleges:
 "THE REQUIREMENTS OF CRIMINAL RULE 11 WERE NOT MET BY THE TRIAL COURT IN OBTAINING APPELLANT'S PLEA OF GUILTY."
Appellant divides this assignment of error into two subparts, the first of which states:
 "The court did not ensure that Appellant understood the nature of the charge."
Pursuant to Crim.R. 11 (C) (2) (a), a trial court may not accept a guilty plea until it determines that a defendant understands the nature of the charge and the maximum penalty involved. In the case at hand, the trial court informed appellant that he could serve a minimum of twenty years to a maximum of fifty years in prison. When the trial court then asked appellant if he understood the nature of the crimes with which he was charged, appellant responded affirmatively. (Plea Tr. 3). Moreover, appellant's petition to enter a plea of guilty states:
 "3. I have received a true copy of the charge, being an indictment, amended indictment or information, at least 24 hours before being called upon to plead. I have read or had read to me the charge and have discussed it with my lawyer and I fully understand the charge and the elements of the crime or crimes contained within the charge made against me.
"* * *
 "6. My lawyer has counseled with me and advised me as to the nature of the charge, the elements contained therein, and all the lesser included crimes and on all possible defenses
* * *."
Appellant executed this petition in front of the trial court at the plea hearing. (Plea Tr. 7). Furthermore, attached to the petition was a certificate signed by appellant's counsel which declared that he had explained the charges to appellant. Nonetheless, appellant states that he was uninformed as to the nature of the charges, and complains that the trial court should have read the charges to him at the plea hearing. Appellant's claim is without merit.
It has been held that a trial court need not advise a pleading defendant of the elements of the crime to which he is pleading as long as the totality of the circumstances imply an understanding on the part of such defendant. See, e.g., State v. Swift
(1993), 86 Ohio App.3d 407, 409 (holding that an expression of confusion by a defendant as to an element requires the court to explain more thoroughly); State v. Rainey (1982), 3 Ohio App.3d 441,442. Furthermore, we have previously decided that:
 "Crim.R. 11 (C) (2) does not require that the trial court inform the defendant of the nature of the offense. The court must only determine that the defendant understands the nature of the charge. In the case at bar, the trial court made inquiry to assure that appellant understood the nature of the charges against him and further informed appellant as to the maximum penalties involved. The record indicates appellant acknowledged that he did understand." State v. Campbell (May 30, 1995), Mahoning App. No. 88 C.A. 217, unreported, 2. (Citations to transcript omitted.)
Similarly, in the case sub judice, appellant stated on the record that he understood the nature of the charges. Further, his counsel certified that he explained the charges to appellant. Appellant signed a petition that declared that he read the indictment, which clearly charged him with comitting rape and felonious sexual penetration against his step-daughters. Appellant was also provided with a bill of particulars which described the offenses in more detail. Appellant does not claim that he had no knowledge of the contents of the bill of particulars, nor is there anything in the transcript to indicate that appellant failed to understand the charges against him. SeeState v. Honecker (June 27, 1996), Belmont App. No. 92-B-26, unreported, 2-3. For the above reasons, the trial court properly determined that appellant was aware of the nature of the offenses with which he was charged.
The second subpart of appellant's sole assignment of error alleges:
 "The term `compulsory process' was not explained to Appellant."
Pursuant to Crim.R. 11 (C) (2) (c), a trial court may not accept a guilty plea until it informs the defendant and determines that the defendant understands that he is waiving his right "to have compulsory process for obtaining witnesses in his favor." Compulsory process is the precess to compel the attendance in court of a person wanted there as a witness to elicit testimony on behalf of the defense. Section 10, Article I, Ohio Constitution. In the case at bar, the following pertinent Crim.R. 11 colloquy took place:
 "THE COURT: Do you understand you are giving up your right to use this court's compulsory process to bring in witnesses who would testify for you in this matter? (Emphasis added)
"THE DEFENDANT: Yes.
"* * *.
 "THE COURT: Now, last week, you were under the influence of Zoloft and sleeping pills. Can you tell me if this week you are clear headed enough to do what you are doing?
 "THE DEFENDANT: Yes, I'm clear headed I'm still under Zoloft.
 "THE COURT: Did you take sleeping pills last night?
"THE DEFENDANT: No.
"THE COURT: Zoloft is an anti-depressant.
 "THE DEFENDANT: Yes." (Plea Tr. 3, 6). (Emphasis added).
Appellant claims that he did not know what the term "compulsory process" meant because he only has a twelfth grade education and he was on Zoloft, an anti-depressant.
Initially, we point out that the court did everything it could to ensure appellant's mind was not affected by medications. Defendants who are taking anti-depressants are not incompetent to stand trial or to enter pleas solely because they are on medication. See R.C. 2945.37 (F). Appellant's answers during the Crim.R. 11 colloquy refute the claim that the medication affected his understanding of the term "compulsory process." Appellant states that the term "compulsory process" is "gibberish" to a nonlawyer and claims that he did not understand the term because he only has a twelfth grade education. Thus, appellant admits that it was not the medication that affected his interpretation of the phrase "compulsory process."
If appellant truly did not understand that the trial court used the term "compulsory process" to mean that if he went to trial, then he could subpoena witnesses and compel their appearance in court, then he should not have responded affirmatively to the trial court's question. Moreover, the trial court used almost the exact language of Crim.R. 11 (C) (2) (c). The Ohio Supreme Court has held that it strongly recommends that trial courts use the language of Crim.R. 11 (C) and stop after naming each constitutional right that is being waived in order to give the defendant the chance to specifically point out that which he does not understand. State v. Ballard (1981), 66 Ohio St.2d 473,479. Accordingly, a trial court need not explicitly define "compulsory process" to a defendant who responds affirmatively after being asked, "Do you understand that you are giving up your right to use this court's compulsory process to bring in witnesses who would testify for you in this matter." In fact, the definition of compulsory process is basically encompassed in the trial court's question. By appellant's affirmative response to the question, we infer that he used his powers of reasoning and figured out what the term meant. Thus, Crim.R. 11 was not violated by the trial court in accepting appellant's guilty plea, and appellant's arguments fail.
Appellant's sole assignment of error on appeal is found to be without merit.
The judgment of the trial court is affirmed.
Donofrio, J., concurs.
Waite, J., concurs.
APPROVED:
 _________________________ EDWARD A. COX, PRESIDING JUDGE