JOURNAL ENTRY AND OPINION
Appellant appeals the trial court's sentence of six years for felonious assault. She claims the court erred in failing to impose a minimum, as well as a more proportionate, term of imprisonment. Appellant also claims that the trial court erred because her plea to the charge of felonious assault was not knowingly, voluntarily, or intelligently given. For the reasons that follow, we affirm the decisions of the trial court.
In November 1998, appellant's seven-week-old infant son, Lawrence Jr., was found dead in the family home. The Cuyahoga County Coroner determined that Lawrence Jr.'s death was the end result of asphyxia by cervical compression, sustained when the child was left unattended in a child seat. The Coroner also found that Lawrence Jr. had suffered blunt impacts to his head and left upper extremity. In December 1998, appellant was originally indicted for various offenses,[1] including aggravated murder, relating to the death of her infant son, Lawrence Jr.[2]
Appellant eventually pleaded guilty to an amended indictment. She was convicted of two counts of child endangerment, in violation of R.C.2919.22, relating to her two older children. As amended, the two counts constituted misdemeanors of the first degree. As to Lawrence Jr., appellant was also convicted of an additional charge of child endangerment, a felony of the second degree. Lastly, appellant pleaded guilty to one count of felonious assault, also a felony of the second degree. On her conviction for felonious assault, the trial court sentenced appellant to serve six years, which was to run concurrent with a three-year term on the other second degree felony, that is, child endangerment.[3]
In three separate assignments of error, appellant challenges her conviction and sentence for felonious assault. We now turn to appellant's first claim of error.
Assignment of Error No. 1
 THE TRIAL COURT ERRED IN SENTENCING APPELLANT ON THE FELONIOUS ASSAULT COUNT BY: (a) FAILING TO IMPOSE THE MINIMUM SENTENCE AS REQUIRED BY REVISED CODE SECTION 2929.14(B).
Appellant's conviction for felonious assault in violation of R.C.2903.11 carried a possible sentence of 2 to 8 years. Prior to the imposition of her six-year sentence, the trial court reviewed various pre-sentence/mitigation reports and heard testimony from a social worker from Children and Family Services, who had worked on the case after the death of appellant's son. The witness made the following statements.
 On November 19th, 1998, seven-week-old infant Lawrence Clark Jr. was found dead in the Clark family home.
 Although the child's parents, Michelle and Lawrence Clark Sr., maintain that the child died of natural causes, Lawrence Jr. presented marks and wounds consisting of contusions of the head, neck, and lower extremity, abrasions of the head, neck and trunk, lacerations of the head and other new injuries and fractures in various stages of healing.
 According to the Cuyahoga County Coroner, Elizabeth K. Balraj, M.D., the death in this case was the end result of asphyxia by cervical compression, sustained when left unattended in a child seat, and another condition of blunt impacts to the head and left upper extremity, sustained when assaulted by a person in the aforementioned circumstance, and was homicidal in nature.
 Lawrence Jr. lived a short life of seven weeks and during that time endured a tremendous amount of brutal, inhumane and fatal injuries, which resulted in his premature death.
* * *
 The Hlavsa/Clark family have had an extensive history with the Department of Children and Family Services, (CFS), in Cuyahoga County, along with Child Protection agencies in other counties and states.
* * *
 The family continues to maintain that Lawrence Clark, Jr. died of natural causes. This fact alone is disturbing, considering the severity of the injuries this child endured.
* * *
 The Department of Children and Family Services is concerned with the ability of the Hlavsa/Clark family to protect any child in their care, especially due to the denials of any problems or wrongdoings within the family and the continued lack of remorse expressed by the family.
The witness also informed the court about appellant's parenting history with her other two children. Evidence presented by the social worker showed that appellant's two other children had historically been subjected to filthy living conditions and being locked inside their rooms. The social worker also informed the court that appellant had demonstrated a possible "death instinct" toward her older son. Appellant's medical history showed that she admitted to dropping the child on his head "several times and refused to keep him on his heart apnea monitor." Additional medical history proved that appellant, upon the birth of her daughter, refused to feed or care for the baby, admitting that, when she did feed her, she did it inappropriately.
Before sentencing appellant,[4] the trial court explained as follows:
 This Court has very carefully reviewed all the reports and has taken into consideration; in fact, I might say, deep consideration, and given the defendants and the attorneys in this case every opportunity, and I think you all have to acknowledge that * * *.
 The factors to be considered are, the injury was exacerbated by a physical/mental condition or the age of the victim; the victim suffered serious physical, psychological or economic harm; the offender held a position of trust, was a parent; that the defendant failed to prevent the offense or bring those committing the offense to justice.
 Ever since this happened there has been a conspiracy of silence. Nobody knew anything.
 Well, I guess the legal term is res ipso loquitur, the thing speaks for itself.
 But what is of concern to this Court is, regardless of the people who tried to help, that the blame has been placed; for example, with respect to their allegations, that the police and EMS that came to the home when the baby was already dead threw the baby around and hit it against the side of the car, or the police car; therefore, causing these bruises and injuries to the child.
 However, there are photographs submitted by the police that show that upon entering the home, that the baby was found in the infant seat with those injuries quite visible.
It was always someone else's fault.
 Now, you would have this Court believe that Michelle F. Clark, who was 24 years old, did not know what was going on.
 She graduated from high school. She was in a regular education and not special education classes.
 So it's very easy to put the blame and make excuses, rather than accept the responsibility for her actions.
 Further, the fact that Children and Family Services attempted to intervene, and yet the defendant failed to attend parenting classes and follow their recommendations.
* * *
 Accordingly, this Court finds there are no mitigating circumstances involving Michelle Clark.
 Accordingly, it is the sentence of this Court that with respect to Count 3, that the defendant, Michelle Clark, be incarcerated in Marysville Institution for Women for a period of six years * * * That's on the felonious assault.
Then, on October 21, 1999, the court made the following additional statements relating to appellant's sentence:
Good morning.
 We are here today in the case of the State of Ohio versus Michelle Clark, case number 370693-A. Let the record reflect that the defendant, Michelle Clark, is present before the court with her attorney * * *.
 Now on October 14, 1999, this Court imposed a sentence on Michelle Clark.
 However, I'm vacating the sentence entry of 10-14-99 based on what appears to be a technical omission. This sentence in no way will be changed.
 At the time of the plea, the defendant was made aware of the ramifications of Senate Bill 2, including post release control and no such thing as good time. In fact, bad time.
 However, it appears that this Court omitted to place on the record the three years post release control and, accordingly, it is necessary to insure technical correctness. Okay.
 Again, this Court finds that the imposition — the record will remain the same with respect to this court having to consider — to correct the oral statement.
 The Court finds that the imposition of community control sanctions would demean the seriousness of the offender's conduct and its impact upon the victim.
 A sentence of imprisonment is commensurate of [sic] the seriousness of the offender's conduct and [sic] have an effect upon the victim, and a minimum sentence would demean the seriousness of the offense.
 Accordingly, it is the sentence of this Court that in count six, the defendant be incarcerated * * * for a period of six years * * *.
* * *
 Further, that this defendant — oh, excuse me. Count three. * * * [Emphasis added.]
In the case at bar, appellant claims that the trial judge did "not adequately support her belief that a minimum sentence would demean the seriousness of the offense" and failed to consider mitigating factors. Appellant argues, therefore, that she should have received the minimum sentence for her felonious assault conviction.
In part, R.C. 2929.14(B) provides that a minimum prison term is appropriate for a first offender, "unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." However, the Ohio Supreme Court has clarified that nothing more than one of these findings is required:
 R.C. 2929.14(B) does not require that the trial court give its reasons for its findings that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence.
State v. Edmonson (1999), 86 Ohio St.3d 324, at syllabus. See, also,State v. Halmi (Aug. 16, 2001), Cuyahoga App. No. 78485, unreported, 2001 Ohio App. LEXIS 3602.
In the case at bar, the record belies appellant's claim that the trial court failed to articulate the necessary findings to impose more than a minimum two-year sentence for felonious assault. The transcript from the trial court proceedings amply demonstrates that the trial court did satisfy the statutory sentencing requirements under R.C. 2929.14(B). The trial court clearly stated that a minimum sentence would demean the seriousness of the offender's conduct. The transcript further shows that the court considered, but then rejected, any factors mitigating the offender's conduct. From the callous nature of the crime involved, especially as explained by the social worker, and from the court's statements during the October 14th proceeding, it is clear that the court did more than simply say "magic words" as argued by appellant. Accordingly, appellant's assignment of error I is overruled.
Assignment of Error No. II
 THE TRIAL COURT'S SENTENCE OF SIX YEARS WAS DISPROPORTIONATE PURSUANT TO R.C. 2929.11(B).
Appellant argues that her sentence of six years is disproportionate to the five-year sentence her husband/co-defendant received. Appellant must show, by clear and convincing evidence, that the trial court erred in sentencing her to six years for the felonious assault of her infant son. R.C. 2953.08(d); Cincinnati Bar Association v. Massengale (1991),58 Ohio St.3d 121, 568 N.E.2d 1222; State v. Berry (Mar. 9, 2000), Cuyahoga App. No. 75471, unreported, 2000 WL 263733. R.C. 2929.11(B) states:
 A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.
Appellant erroneously believes that her sentence should be commensurate with her husband's. She ignores the exact language of the statute, which clearly states that the sentence must be "commensurate with and not demeaning to the seriousness of the offender's conduct * * *." (Emphasis added.)
In the case at bar, we note that the statute does not require an identity of sentences between offenders, but, rather, sentences that are consistent between offenders of similar crimes. The law does not require that appellant and her husband receive exactly the same sentences. Identical sentences are not only not required, they are unlikely, given the pre-sentence/mitigation investigative reports that are provided to the trial court before appellant is sentenced. It is clear from the record in this case that, prior to sentencing appellant, the trial court reviewed pre-sentence investigatory and psychiatric reports relating to possible mitigation factors. The trial court considered all the reports unique to appellant, including her medical history and the social worker's testimony. The trial court then determined that appellant's personal parenting history, her on-going refusal to accept intervention from local service agencies, and her documented history of refusing to accept responsibility for anything, most particularly the death of Lawrence Jr., warranted the sentences she received. The record supports the fact that much of the evidence presented to the trial court was unique to appellant. Appellant's assigned error is without merit and overruled.
Assignment of Error No. III
 THE TRIAL COURT ABUSED ITS DISCRETION BY ACCEPTING THE APPELLANT'S INVALID PLEA.
Appellant argues that her guilty plea to the offense of felonious assault is invalid because she was not adequately informed of the nature of the offense she was charged with in the amended indictment.
Before a defendant enters a plea to any criminal charge that carries a possible penalty of imprisonment, the trial court must comply with Crim.R. 11(C). The rule requires that, before accepting a plea, the court address the defendant personally and determine the following:
 * * * that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.
The standard for a reviewing court to use in determining whether a trial court advised defendants of their Crim.R. 11 rights depends on whether those specific rights are protected directly under the Constitution. The Ohio Supreme Court, following Boykin v. Alabama
(1969), 395 U.S. 238, 243-44, explained the constitutional rights an accused must be informed about before a plea is given. The Court stated,
 Prior to accepting a guilty plea from a criminal defendant, the trial court must inform the defendant that he is waiving his privilege against compulsory self-incrimination, his right to jury trial, his right to confront his accusers, and his right of compulsory process of witnesses.
State v. Ballard (1981), 66 Ohio St.2d 473, Syllabus.
Strict compliance is required when a defendant waives a right granted under the Constitution. When a non-constitutional right is waived, however, substantial compliance is sufficient. City of Cleveland v.Wanzo (1998), 129 Ohio App.3d 664, 718 N.E.2d 982. As this court explained in Wanzo: "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." Wanzo citingState v. Nero (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474.
The constitutional rights requiring strict compliance are contained in Crim.R. 11(C)(2)(c). The rights specified under 11(C)(2)(b), on the other hand, are non-constitutional rights:
 understanding the nature of the charges and of the maximum penalty involved, and if, applicable, [non-] eligib[ility] for probation or for the imposition of community control sanctions at the sentencing hearing.
In the case at bar, appellant complains she was not adequately informed of the nature of her offense. Since she complains of a non-constitutional right, the standard of review is substantial compliance. Under this lesser standard, a reviewing court must look to the totality of the circumstances surrounding the plea. State v. Carter (1979),60 Ohio St.2d 34, 38, 396 N.E.2d 757; State v. Collins (July 5, 2001), Cuyahoga App. No. 78596, unreported, 2001 Ohio App. LEXIS 3031. Under this standard of review,
 it is not always necessary that the trial court advise the defendant of the elements of the crime, or to specifically ask the defendant if he understands the charge, so long as the totality of the circumstances are such that the trial court is warranted in making a determination that the defendant understands the charge.
State v. Rainey (1982), 3 Ohio App.3d 441, 442, 446 N.E.2d 188; State v.Calvillo (1991), 76 Ohio App.3d 714, 603 N.E.2d 325. Typically, the trial court is able to ascertain whether a defendant comprehends the nature of the charges and the consequences of a guilty plea through an oral dialogue with the defendant. State v. Caudill (1976), 48 Ohio St.2d 342, at 343, 358 N.E.2d 601, paragraph two of the syllabus. A trial court's determination that a defendant understands the charges can also be gleaned from conversations between the defendant and her attorney. Statev. Swift (1993), 86 Ohio App.3d 407, 621 N.E.2d 513.
In the case at bar, on the day that she entered her plea, appellant was present in court with her three attorneys. The state made the following comments:
 The State of Ohio, with an understanding there will be a change in all four defendants' pleas forthcoming, as to defendant A, Michelle Clark, * * * understands the change in plea will be for Count 3 as indicted which count alleges on or about October 1st
of 1998 to November 19th of 1998 in the County of Cuyahoga said Michelle Clark and Larry Clark did knowingly cause serious physical harm to Lawrence Clark Jr. As indicted, Count 3 is a 2nd-degree felony punishable by a possible term of incarceration of 2 to 8 years in 1-year increments * * *. [Emphasis added.]
Appellant's attorneys indicated that they were "satisfied the defendant Michelle Clark understands the nature of the charges and her constitutional rights." The record shows that the court explained the nature of the felonious assault charge against her along with the rights that she was waiving. This description of the charge must be contrasted with the charges she faced in the original indictment: aggravated murder, murder and felonious assault of her son. Certainly, the original indictment provided a context to help appellant appreciate the nature of the remaining charge to which she ultimately pleaded guilty: felonious assault relating to the death of her infant son. Appellant then pleaded guilty to count three, felonious assault, only after personally indicating to the court that she understood the ramifications of entering the plea.
The record provides ample support that the trial court made sure that appellant understood the nature of the charges against her, not only by explaining those charges, but by speaking directly to and with her about them. We find, therefore, under the totality of the circumstances, that the trial court was justified in determining that appellant subjectively understood the nature of the charges against her and the nature of the plea she would enter to those charges. Appellant's assignment of error is not well-taken.
The judgment of the trial court is hereby affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J., and PATRICIA ANN BLACKMON, J., CONCUR.
[1] In addition to appellant's indictment, her husband and her parents were also indicted for the death of the seven-week-old child.
[2] Appellant was additionally indicted for murder and felonious assault of Lawrence Jr. The original indictment also charged appellant with two separate counts of felonious assault of her two other children, a son and a daughter, both born before Lawrence Jr.
[3] Appellant also received two concurrent six month terms on the reduced misdemeanor charges of child endangerment regarding her two surviving children.
[4] Appellant was initially sentenced on October 14, 1999. On October 21, 1999, however, because of a "technical omission," the trial court vacated the entry of appellant's October 14th sentence and made additional statements on the record relative to appellant's sentence, discussed infra.