James Scates (James), a minor child, appeals from the decision of the Mahoning County Court of Common Pleas, Juvenile Division adjudicating him a delinquent child.
On October 16, 1998, the Youngstown Police Department filed a complaint alleging that James, age sixteen, was a delinquent child. The complaint alleged that on or about August 22, 1998 James caused or attempted to cause physical harm to John Doyle with a baseball bat. It charged him with felonious assault in violation of R.C. 2903.11.
James originally denied the allegation at his arraignment on October 20, 1998. The court held a hearing on December 2, 1998 at which James initially stated that he wished to proceed to trial. However, after a conference with his mother, a representative from detention, and his counsel, he entered an admission to the felonious assault charge. He also entered an admission to a misdemeanor assault charge and, in exchange, appellee, the State of Ohio, dropped a charge of criminal damaging; however, these charges are not fully explained in the record.
The court accepted James' admission and entered a finding of delinquency. Upon agreement of the parties, the court proceeded to disposition. It ordered that James be committed to the Department of Youth Services (DYS) for a minimum period of one year, with credit for forty-eight days, for the felonious assault and that he be committed to the DYS for ninety days, suspended, for the assault. The court entered its judgment on December 3, 1998.
On June 25, 1999, James filed a motion for leave to file a delayed appeal, which this court granted. James filed his notice of appeal on July 6, 1999.
James raises one assignment of error, which states:
 "APPELLANT'S GUILTY PLEA WAS NOT KNOWING, INTELLIGENT OR VOLUNTARY."
James argues that he did not enter his plea knowingly, voluntarily, or intelligently. He points out that he originally told the court he wanted to go to trial. He maintains that the only reason he changed his mind and entered an admission to the charges was that his mother unduly influenced him to do so. He contends that he was nervous and that his mother and his attorney both lectured to him and coaxed him to enter the admission.
Before accepting an admission, the juvenile court must address the juvenile personally and determine both of the following:
 "(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;
 "(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing." Juv.R. 29(D).
This court has held that Juv.R. 29(D) is somewhat analogous to Crim.R. 11(C)(2) in that both require the trial court to personally address the defendant on the record with respect to the rights set out in the rules.In re Royal (1999), 132 Ohio App.3d 496, 504. A juvenile court need only substantially comply with Juv.R. 29(D) before accepting the juvenile's admission. Id. If the court fails to substantially comply with Juv.R. 29(D), the adjudication must be reversed and the juvenile must be permitted to change his plea. Id.
The best method for the court to comply with Juv.R. 29(D) is to use the language of the rule itself, "carefully tailored to the child's level of understanding, stopping after each right and asking whether the child understands the right and knows that he is waiving it by entering an admission." In re Miller (1997), 119 Ohio App.3d 52, 58, citing Statev. Ballard (1981), 66 Ohio St.2d 473, 479.
When James initially went before the court to enter his admission, he changed his mind. The court advised James of the rights he was waiving but when the court asked him if he was prepared to enter his plea, he shook his head no. James then informed the court that he wished to go to trial. Consequently, the court set a date to continue the adjudication hearing.
The proceedings continued after a recess when James indicated that he now wished to enter an admission. His attorney stated that James had previously been confused and now had a better understanding of what he was doing. Before the court accepted James' admission, the following colloquy took place.
 "THE COURT: James, what is it you didn't understand from before?
"MINOR SCATES: I was just confused about everything.
"THE COURT: Like what? * * *.
 "MINOR SCATES: I was thinking that if I went to trial, I can get found if I get found not guilty; but if I get found guilty, I get double the time. I didn't think about that.
 "THE COURT: Well, if you are found not guilty, yeah, you would go home. If you are found guilty, I can't tell you whether you would get double the time or not. I don't know that. But at this point what do you want to do?
"MINOR SCATES: Plead guilty.
"* * *
 "THE COURT: Okay. James, now, do you know what that means?
"MINOR SCATES: Yes, sir.
 "THE COURT: That means that if I accept your plea, you do give up your right to a trial. That's your complete and absolute right to require the State to present evidence and prove these charges against you by proof beyond a reasonable doubt. You are aware of that?
"MINOR SCATES: Yes, sir.
 "THE COURT: And by entering your plea, you are giving up that right.
"MINOR SCATES: Yes, sir.
 "THE COURT: You are also giving up the right to confront and cross examine any witnesses that might appear against you.
"MINOR SCATES: Yes, sir.
 "THE COURT: You give up the right possibly to certain further appeals.
"MINOR SCATES: Yes, sir.
 "THE COURT: And there is also certain consequences that could be imposed. Number one, with regard to the assault charge, you could be committed to detention for a period up to 90 days. With regard to the felonious assault, you could be committed to the care and custody of the Ohio Department of Youth Services for a minimum period of one year. Do you understand that, and that's a minimum period?
"MINOR SCATES: Yes, sir.
 "THE COURT: Okay. Knowing all of that, you are still prepared to enter your plea?
"MINOR SCATES: Yes, sir.
 "THE COURT: Okay. You have had ample time now to go over this with your lawyer; right?
"MINOR SCATES: Yes, sir.
 "THE COURT: Okay. He has been able to answer all of your questions to your satisfaction?
"MINOR SCATES: Yes, sir." (Tr. 10-14).
Also, the court had previously informed James that if he went to trial, he had a right to present evidence on his own behalf and that he could not be forced to testify against himself. James stated that he understood that he was waiving these rights. James additionally stated that he understood what his lawyer said when he advised the court of the charges James was facing.
The court additionally inquired of James' mother. It asked her if she had any question about her son's plea or any objections to it, to which she responded "no." She also stated the following:
 "MRS. SCATES: I wish I had it done. I wish I could have objected earlier because I would have spoken for him and told him to take it because at that time you have to give me credit. He's standing up there. He was really nervous. He was not thinking. That's when we went out there. We got together, and we explained everything to him. That's why he is back here now." (Tr. 15).
James argues that these comments by Mrs. Scates indicate that she exerted undue influence on him, thus rendering his plea involuntary and not knowingly made. He asserts that his mother took him out in the hallway and cajoled him into entering an admission.
No evidence exists on the record to support James' contentions. There is no transcript of the conversations that took place in the hallway. The only indication of what occurred in the hallway was that James had a discussion with a representative from the detention center, his mother, and his attorney. His attorney stated that apparently James did not understand the proceeding. His attorney stated that the discussion in the hallway gave James a better comprehension of what he was doing. Mrs. Scates also stated that James was nervous and that they explained everything to him in the hallway. These statements do not demonstrate that James entered his plea unknowingly, involuntarily, or unintelligently.
Furthermore, the conversations between the court and James demonstrate that the court substantially complied with Juv.R. 29(D) in accepting James' admission. The court specifically informed James of each right he had and asked him if he understood that he was waiving these rights by entering an admission. The court also advised James of the potential punishment that he faced. James stated that he understood that he was waiving each of his rights and that he understood the potential punishment he faced. He then stated that he wished to enter the admission.
Accordingly, James' sole assignment of error is without merit.
For the reasons stated above, the decision of the trial court is hereby affirmed.
Waite, J., concurs.
DeGenaro, J., concurs.