JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Clay Krcal appeals from the judgment imposed by the trial court in two cases, CR-392833 and CR-381318. In Case No. CR-392833, defendant pled guilty to eleven counts of theft, felonies of the fourth degree, and one count of theft, a felony of the third degree. In exchange for this plea, the remaining counts of the indictment and two additional cases against the defendant were nolled, CR-393259 and CR-402361. In Case No. CR-381318, defendant pled guilty to one count of forgery, a felony of the fifth degree.
 {¶ 2} In CR-381813, the court imposed an eleven-month sentence to be served consecutive to defendant's sentence from Lorain County on an unrelated felony matter. In CR-392833, the court imposed sentences of one year for each of the fourth degree felony thefts to run consecutive to each other and consecutive to a five-year sentence on the third degree felony theft. The sentence in CR-392833 was ordered to be served consecutive to the sentence imposed in CR-381813.
 {¶ 3} Defendant appeals, assigning that the circumstances of his plea hearings violated the provisions of Crim.R. 11(C) and that the trial court erred by imposing consecutive sentences and in not imposing the minimum sentence. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 4} In CR-381318, defendant was indicted for forgery, uttering, theft and receiving stolen property in relation to his unauthorized use of a credit card. He pled guilty to one count of forgery, a fifth degree felony.
 {¶ 5} In CR-392833, defendant was charged with multiple counts of theft relating to the alleged development of a residential subdivision. At least twelve families gave money to the defendant and/or the co-defendants as down payments on homes in the belief that the money would be placed in an escrow account. In total, the families paid $343,300 to the defendant and co-defendants. The homes were not built and the money was not refunded; nor was it placed into an escrow account.
 {¶ 6} Defendant testified that he had $400,000 in an account to repay the victims. The whereabouts of this money, and even its existence, is uncertain. Although defendant claims to have this money, his representations as to its location repeatedly fluctuated. Defendant represented to the probation department that the funds were in Puerto Rico. At sentencing, the defendant first stated the funds were in Boca Raton, Florida and then said they were in Miami. Defendant also claimed to have a lack of knowledge about the account on the basis that he gave his co-defendant a power of attorney.
 {¶ 7} The detective investigating this matter testified that there were no such funds. The attorneys for the co-defendant stated that they were unaware of the existence of any such funds. Regardless, to date, the victims have not recovered their money. Defendant pled guilty to twelve counts of theft (eleven fourth degree felonies and one third degree felony).[1]
 {¶ 8} At the sentencing hearing, several families testified about the effect and impact of defendant's conduct and their financial losses. The record further reveals that at the time of committing these offenses, the defendant was on probation in Lorain County for an unrelated felony offense. According to the record, defendant made several false statements to the probation department during the pre-sentence investigation, including his education and work history.
 {¶ 9} The trial court conducted plea hearings in both cases and advised the defendant of his rights and the potential consequences of his pleas. (Tr. CR-381318, pp. 9-11) and (Tr. CR-381318, 393259, 392833, pp. 8-15). Both the defense and prosecution agreed that the court had complied with the requirements of Crim.R. 11(C). (Tr. CR-381318, pp. 11) and (Tr. CR-381318, 393259, 392833, pp. 15).
 {¶ 10} At sentencing, the trial court considered that the defendant was on probation when he committed the theft offenses; he had prior convictions; he had past probation violations; a lack of remorse for the offenses in that the defendant denied involvement in the offense and chose to blame others. (Tr. 102-103). The court further considered that the nature of the defendant's offenses were more serious because the victims suffered serious physical, psychological or economic harm as a result of the offense; the relationship of the victim to the defendant facilitated the offense because the victims hired the defendant. (Tr. 103).
 {¶ 11} The court then considered the minimum sentence and determined that the shortest prison term would demean the seriousness of the defendant's conduct and not adequately protect the public from future crimes. The court supported these conclusions with the fact of the defendant's history of theft offenses, the defendant's demeanor at sentencing and an established pattern of conduct. (Tr. 105). The court concluded that the defendant committed the worst form of the offense and "that there is a likelihood of [the defendant] continuing future crimes of the same manner based upon [his] previous conduct." (Tr. 105).
 {¶ 12} The court imposed consecutive sentences finding it necessary to protect the public from future crimes and to punish the defendant. The court determined that consecutive sentences "are not disproportionate to the seriousness of the offender's conduct" and that the defendant poses a danger to the public. In support, the court cited the defendant's multiple theft offenses; commission of the offense while on probation; that the defendant caused harm that was "so great and unfortunate" to so many people. The court again considered the defendant's criminal history and the defendant's "continuing conduct in this arena." Based on these factors, the court determined that not imposing consecutive sentences would demean the seriousness of the offenses. (Tr. 106).
 {¶ 13} With regard to CR-381318, the court considered that the defendant's actions in that case were not involved "in the conduct with which [the defendant] virtually attacked the community with [his] atrocious acts." (Tr. 107). Accordingly, the court sentenced the defendant to less than the maximum sentence but with an interest in protecting the public.
 {¶ 14} The court imposed the sentences in each case as detailed above. The defendant appeals assigning four errors for our review. We will address them in order and together where appropriate.
 I. {¶ 15} IN EITHER OR BOTH PLEA HEARINGS THE TRIAL COURT ERRED IN VIOLATION OF CRIM.R. 11(C) BY FAILING TO EXPLAIN THE RIGHTS THAT DEFENDANT WAS WAIVING BY PLEADING GUILTY.
 II. {¶ 16} THE TRIAL COURT'S FAILURE TO SPECIFICALLY INQUIRE OF DEFENDANT WHETHER HE UNDERSTOOD THE NATURE OF THE CONSTITUTIONAL RIGHTS ENUMERATED IN CRIM.R. 11(C) CONSTITUTES A VIOLATION OF DUE PROCESS.
 III. {¶ 17} THE PROCEEDINGS BELOW WERE DEFECTIVE IN THAT NO INQUIRY WAS MADE REGARDING WHETHER DEFENDANT UNDERSTOOD THE NATURE OF THE CRIMES AND CONSEQUENTLY THE COURT ERRED IN ACCEPTING PLEAS WHICH WERE NEITHER KNOWINGLY, WILLINGLY NOR INTELLIGENTLY MADE IN VIOLATION OF CRIM.R. 11 AND DEFENDANT'S CONSTITUTIONAL RIGHTS.
 {¶ 18} Defendant complains that the trial court erred by not specifically inquiring as to whether the defendant understood (1) the meaning and nature of the rights he was waiving, and/or (2) the nature of the crimes. The State counters that the trial court complied with the directives of Crim.R. 11(C) and the related case law. We agree.
 {¶ 19} Crim.R. 11(C)(2) provides:
 {¶ 20} In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and:
 {¶ 21} (a) Determining that he is making the plea voluntarily, with understanding of the nature of the charge and of the maximum penalty involved, and if applicable, that he is not eligible for probation.
 {¶ 22} (b) Informing him of and determining that he understands the effect of his plea of guilty or no contest, and that the court upon acceptance of the plea may proceed with judgment and sentence.
 {¶ 23} (c) Informing him and determining that he understands that by his plea he is waiving his rights to jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself.
 {¶ 24} The standard for reviewing whether or not the trial court accepted a plea in compliance with Crim.R. 11(C) is a de novo standard of review. State v. Stewart (1977), 51 Ohio St.2d 86. It requires an appellate court to review the totality of the circumstances and determine whether the plea hearing was in substantial compliance with Crim.R. 11(C). Id. at 92-93. Substantial compliance with Crim.R. 11(C) requires the trial court to engage the defendant on the record in a reasonably intelligible dialogue. State v. Ballard (1981), 66 Ohio St.2d 473
 {¶ 25} Defendant concedes that at both plea hearings, the trial court explained each right the defendant was waiving by entering his guilty pleas. We have repeatedly held that "courts are not required to explain the elements of each offense, or even to specifically ask the defendant whether he understands the charges, unless the totality of the circumstances shows that the defendant does not understand the charges."State v. Cobb (Mar. 8, 2001), Cuyahoga App. No. 76950, unreported, citingState v. Mullins, supra, citing State v. Kavlich (June 15, 2000), Cuyahoga App. No. 77217, unreported, citing State v. Rainey (1982),3 Ohio App.3d 441, 442; State v. Swift (1993), 86 Ohio App.3d 407, 412;State v. Aponte (Mar. 9, 2000), Franklin App. Nos. 99AP-695, 99AP-696, unreported; State v. Burks (Nov. 13, 1997), Cuyahoga App. No. 71904, unreported.
 {¶ 26} Here, the record shows that the court conducted an extensive inquiry of the defendant in both plea hearings, asking his age and education level, whether he was under the influence of drugs or alcohol and whether he was satisfied with his attorney's representation. He responded to all these questions. The court further instructed the defendant to stop the proceedings and indicate to the court at any point that he did not understand a statement made by the Court or counsel. Notwithstanding, at no point during either plea hearing did the defendant indicate or suggest that he did not understand the nature of the charges against him. Likewise, the defendant never indicated that he did not understand the meaning of any of the rights that he was waiving but rather confirmed that he did understand each right.
 {¶ 27} Not only did the defendant indicate that he understood his various constitutional rights, he also acknowledged the possible consequences of entering the pleas. The record clearly illustrates that the trial judge engaged in a meaningful dialog with defendant to the satisfaction of Crim.R.11(C)(2) in both cases. Accordingly, we find that defendant's guilty pleas were made knowingly, intelligently, and voluntarily and that the trial judge substantially complied with the statutory guidelines for accepting the pleas. Accordingly, the first, second and third assignments of error are overruled.
 IV. {¶ 28} THE TRIAL COURT ERRED IN SENTENCING MR. KRCAL TO CONSECUTIVE TERMS AND IN FAILING TO SENTENCE HIM TO THE MINIMUM.
 {¶ 29} Defendant's contention that the trial court erred by not imposing the minimum sentences is without merit. R.C. 2929.14(B) provides in relevant part as follows:
 {¶ 30} (B) Except as provided * * * if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender has not previously served a prison term, the court shall impose the shortest prison term authorized for the offense * * * unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
 {¶ 31} In addressing the trial court's discretion in deviating from imposing the shortest prison term, the Ohio Supreme Court directs that "a trial court sentencing an offender to his first imprisonment must specify on the record that one or both reasons allowed by R.C. 2929.14(B) justify a sentence longer than the minimum." State v. Edmonson (1999),86 Ohio St.3d 324, 327. The trial court, however, need not explain these reasons. Instead, the court must note that "it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons." Id. at 326.
 {¶ 32} We further note that an appellate court will not reverse a trial court on sentencing issues unless the defendant shows by clear and convincing evidence that the trial court has erred. R.C. 2953.08(G)(1).
 {¶ 33} In this case, the court complied with the statutory directives as expounded upon by the Ohio Supreme Court. The court found both sanctioned reasons applicable for deviating from imposing the shortest prison term. Ibid. Additionally, the court meticulously detailed its reasons for making these findings as set forth previously herein.
 {¶ 34} Defendant's contention that the trial court erred by imposing consecutive sentences is also without merit. R.C. 2929.14(E)(4) allows a trial court to impose consecutive prison terms for convictions of multiple offenses upon the making of certain findings enumerated in the statute. Specifically, R.C. 2929.14(E)(4) provides in pertinent part:
 {¶ 35} If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 36} (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 37} (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 38} (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
 {¶ 39} Here, the trial court stated the following relevant to its decision to impose consecutive sentences:
 {¶ 40} In considering imposing consecutive sentences the Court finds that a consecutive sentence would be necessary to protect the public from future crimes and to punish the defendant, you, for what you've done and that consecutive sentences are not disproportionate to the seriousness of the offenders conduct, and the Court considers the danger that you post [sic] to the public.
 {¶ 41} The Court feels that you have committed multiple offenses of theft and that at one of these offenses you were on probation for while this offense occurred. The Court considers that you caused harm by these multiple offenses and it was so great and unfortunate that a single person could do this to so many people.
 {¶ 42} The Court, also, considers your history of criminal conduct which is consistent with theft offenses and, therefore, the Court feels that this is the wors form of the offense that — of a theft offense because of the gravity and the impact that you've had on others as well as your continuing conduct in this arena and therefore feels that to impose either the minimum sentence, not impose consecutive sentences would demean the seriousness of the offenses that were committed.
(Tr. pp. 106-107).
 {¶ 43} Based upon the foregoing, we find that the trial court complied with the dictates of R.C. 2929.14(E)(4) and was thus justified in imposing consecutive sentences.
 {¶ 44} Defendant's fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., and DIANE KARPINSKI, J., CONCUR.
[1] At the plea hearing, the State agreed to modify the plea to drop numerous theft counts if defendant repaid the victims. Defendant failed to do so.