The State of Ohio, Appellee, *v.* Ballard, Appellant.

(No. 80-900—Decided June 24, 1981.)

474

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Mark A. Stanton,* for appellee.

*Messrs. Marshman, Snyder & Corrigan, Mr. Anthony A. Cox* and *Mr. Terrance O'Donnell,* for appellant.

HOLMES, J. This cause presents a recurring question of what is required of a trial judge when accepting a guilty plea or a plea of no contest from a criminal defendant. Here, the appellant challenges the validity of his guilty plea because of the trial court's alleged failure to inform him that by pleading guilty he was waiving his right to a trial by jury. Appellant, in effect, argues that the trial court did not comply in this regard with the mandate of either Crim. R. 11(C) or *Boykin* v. *Alabama* (1969), 395 U.S. 238.

Crim. R. 11 provides, in pertinent part:

"(C) Pleas of guilty and no contest in felony cases.

"(1) Where in a felony case the defendant is unrepresented by counsel the court shall not accept a plea of guilty or no contest unless the defendant, after being readvised that he has the right to be represented by retained counsel, or pursuant to Rule 44 by appointed counsel, waives this right.

"(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and:

"(a) Determining that he is making the plea voluntarily, with understanding of the nature of the charge and of the maximum penalty involved, and, if applicable, that he is not eligible for probation.

"(b) Informing him of and determining that he understands the effect of his plea of guilty or no contest, and that the court upon acceptance of the plea may proceed with judgment and sentence.

"(c) Informing him and determining that he understands

that by his plea he is waiving his rights to jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself."[1]

The first time this court had an opportunity to speak to Crim. R. 11(C) was *State* v. *Caudill* (1976), 48 Ohio St. 2d 342. In *Caudill,* this court said that trial courts must "adhere scrupulously" to the provisions of Crim. R. 11(C)(2).[2]

However, the *Caudill* rule of scrupulous adherence was short-lived. In *State* v. *Stewart* (1977), 51 Ohio St. 2d 86, the trial court had neglected to specifically inform the defendant, who was pleading guilty to murder, that he was not eligible for probation. This court held that such omission did not constitute prejudicial error, and that there was substantial compliance with Crim. R. 11. In essence, the holding in *State* v. *Stewart* is that where the record discloses that the trial court personally addressed the defendant during his plea hearing and informed him of his constitutional rights as contained in Crim. R. 11, the omission of not informing the defendant of one of the non-constitutional rights, such as probation, would not *per se* constitute prejudicial error, or plain error.[3]

This court, in *State* v. *Stewart,* in order to show that the defendant was not prejudiced by the omission, pointed out in the opinion that the record reflects certain things that took place at the plea hearing which would have reasonably advised the defendant of the consequences of his plea, and that he was facing imminent sentence. This court set forth as part of the colloquy between the trial court and the defendant the fact that the defendant knew the maximum penalty that was involved, and that the court may immediately sentence the defendant. Further, this court pointed out that the defendant had signed a

---

[1] See, also, Crim. R. 11(F) which requires the underlying agreement, in cases where there is a negotiated plea, to be stated on the record in open court.

[2] This court's holding in *Caudill* was foreshadowed by *State* v. *Griffey* (1973), 35 Ohio St. 2d 101. In *Griffey,* a case which was decided before the effective date of the criminal rules, the court, at page 111, stated, "***Rule 11 of the Ohio Rules of Criminal Procedure, effective July 1, 1973, must be scrupulously adhered to***."

[3] Ohio is not the only state that has limited an earlier decision which required strict adherence to guilty plea procedures. See, *e.g., Guilty Plea Cases* (1975), 395 Mich. 96, 235 N.W. 2d 132.

"Petition" for entering a plea, which paper, among other things, declared that the defendant had not been promised probation if he pled guilty.

Based upon the above facts, and a finding that the trial court did inform the defendant of his constitutional rights, which were duly waived, and the other various consequences of his plea, this court, at page 93, held that "[t]he trial court substantially complied with the requirements in Crim. R. 11, and the failure to personally advise appellant that in entering a plea of guilty to murder he would not be eligible for probation does not rise to the status of prejudicial error."

*Stewart* was followed by *State* v. *Strawther* (1978), 56 Ohio St. 2d 298, where the trial court neglected to inform the defendant that he had the right to compulsory process, but the defendant signed a written plea of guilty in which he waived his right to compulsory process. Also, in *State* v. *Billups* (1978), 57 Ohio St. 2d 31, this court upheld the validity of a plea where the defendant, having been present in the courtroom when the judge conducted a colloquy informing another defendant of his rights, executed a written document which encompassed the rights set forth in Crim. R. 11(C)(2).

The state, relying on *State* v. *Stewart, supra,* argues that the trial court substantially complied with the requirements of Crim. R. 11(C). However, here, we are not faced solely with the question of compliance with the nonconstitutional rights of a defendant in Crim. R. 11(C), as was this court in *State* v. *Stewart.* Appellant alleges that he was not informed of his constitutional right to trial by jury; therefore, we must resolve this matter in light of *Boykin* v. *Alabama, supra.* This resolution involves a two-step analysis. First, what does *Boykin* require of a trial court. Second, in what manner must a trial court satisfy the requirements.

In *Boykin,* the defendant pled guilty to five counts of robbery. The record did not reveal that the trial court conducted any discussion with the defendant to determine that he had an understanding of what a guilty plea connotes and that he was aware of its consequences. The court held, at page 242, that it was plain error to accept a guilty plea without an affirmative showing that "[i]t was intelligent and voluntary." The court, at page 243, stated:

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. *Malloy* v. *Hogan,* 378 U. S. 1. Second, is the right to trial by jury. *Duncan* v. *Louisiana,* 391 U. S. 145. Third, is the right to confront one's accusers. *Pointer* v. *Texas,* 380 U. S. 400. We cannot presume a waiver of these three important federal rights from a silent record."[4]

Here, the trial court did not specifically inform the defendant that by pleading guilty he was waiving his right to a jury trial, a *"Boykin* right." Thus, this court must determine whether such an omission results in a *per se* involuntary and unintelligent guilty plea, mandating that the plea be vacated and the defendant allowed to plead anew.

There is a split of authority as to whether the complete omission of a *Boykin* constitutional right alone is cause to nullify a guilty plea. The answer to this question rests upon how *Boykin* is interpreted. Some courts read *Boykin* as requiring guilty pleas to be no more than voluntarily and knowingly entered, and hold that failure to mention, in any manner, a *Boykin* right does not necessarily result in an involuntary and unknowing guilty plea. See, *e.g.,* *Roddy* v. *Black* (C.A. 6, 1975), 516 F. 2d 1380, certiorari denied 423 U. S. 917; *Wilkins* v. *Erickson* (C.A. 9, 1974), 505 F. 2d 761; *Todd* v. *Lockhart* (C.A. 8, 1974), 490 F. 2d 626; *McChesney* v. *Henderson* (C.A. 5, 1973), 482 F. 2d 1101; *Beavers* v. *Anderson* (C.A. 10, 1973), 474 F. 2d 1114; *Wade* v. *Coiner* (C.A. 4, 1972), 468 F. 2d 1059; *United States* v. *Frontero* (C.A. 5, 1971), 452 F. 2d 406; *Smith* v. *State* (1978), 264 Ark. 329, 571 S.W. 2d 591; *State* v. *Colyer* (1976), 98 Idaho 32, 557 P. 2d 626; *Davis* v. *State* (1976), 278 Md. 103, 361 A. 2d 113; *Commonwealth* v. *Morrow* (1973), 363 Mass. 601, 296 N.E. 2d 468; *State* v. *Propotnik* (1974), 299 Minn. 56, 216 N.W. 2d 637; *State* v. *Turner* (1971), 186 Neb. 424, 183 N.W. 2d 763; *State* v. *Martinez* (App. 1976), 89 N.M.

---

[4] It may be noted that *Boykin* did not mention the right of the defendant to have compulsory process of witnesses to testify on his behalf. However, as the right is guaranteed by the Sixth Amendment to the United States Constitution, and like those mentioned in *Boykin* is a trial right, we hold that the defendant must also be informed of his right to compulsory process.

729, 557 P. 2d 578; *Heffley* v. *Warden* (1973), 89 Nev. 573, 516 P. 2d 1403;[5] *State* v. *Lambert* (1976), 266 S.C. 574, 225 S.E. 2d 340; *Merrill* v. *State* (1973), 87 S.D. 285, 206 N.W. 2d 828;[6] *Wood* v. *Morris* (1976), 87 Wash. 2d 501, 554 P. 2d 1032.

Other courts have held that for a guilty plea to be voluntarily and intelligently entered, the defendant must be informed that he is waiving his *Boykin* rights. See, *e.g.*, *Easterling* v. *State* (Ala. Crim. App. 1977), 352 So. 2d 33; *People* v. *Rizer* (1971), 5 Cal. 3d 35, 484 P. 2d 1367; *State* v. *Bugbee* (1971), 161 Conn. 531, 290 A. 2d 332; *Williams* v. *State* (Fla. 1975), 316 So. 2d 267; *Williams* v. *State* (1975), 263 Ind. 165, 325 N.E. 2d 827; *Brainard* v. *State* (Iowa 1974), 222 N.W. 2d 711; *People* v. *Jaworski* (1972), 387 Mich. 21, 194 N.W. 2d 868; *State* v. *Holden* (La. 1979), 375 So. 2d 1372; *Boag* v. *State* (1980), 44 Ore. App. 99, 605 P. 2d 304; and *State* v. *Mackey* (Tenn. 1977), 553 S.W. 2d 337.

To us, the latter interpretation is more persuasive. We hold that a guilty plea is constitutionally infirm when the defendant is not informed in a reasonable manner at the time of entering his guilty plea of his rights to a trial by jury and to confront his accusers, and his privilege against self-incrimination, and his right of compulsory process for obtaining witnesses in his behalf. This holding is not only mandated by our reading of *Boykin*, but also to further two important interests. See *McCarthy* v. *United States* (1969), 394 U. S. 459.

The first interest is that of the criminal defendant. The criminal defendant's interest is having a full understanding of what rights he waives by pleading guilty. This interest is best protected when the trial court fully informs the defendant what those rights are.

There is a second, broader, interest involved here. The interest of society in the finality of guilty pleas.

"***[T]o the extent that improperly administered pleas generate and encourage appeals which are time consuming, burdensome and difficult to process, the societal interests in rehabilitation, speedy justice, swift punishment and deter-

---

[5] Nevada initially required strict compliance with *Boykin*. *Higby* v. *Sheriff* (1970), 86 Nev. 774, 476 P. 2d 959.

[6] South Dakota initially required strict compliance with *Boykin*. *Nachtigall* v. *Erickson* (1970), 85 S.D. 122, 178 N.W. 2d 198.

rence are thwarted." *United States* v. *Carter* (C.A. 3, 1980), 619 F. 2d 293, 297.

This goal is best served by the requirement that the trial court shall inform a criminal defendant that he waives his constitutional trial rights by pleading guilty.

Having decided that the trial court must inform a defendant of his constitutional trial-related rights, we next discuss the issue of the manner in which the defendant must be informed of those rights. Precisely, we must determine whether the failure of the trial court to inform a defendant of these rights in the exact language of Crim. R. 11(C) constitutes grounds for vacating the defendant's plea. Here, the trial court did not use the language "right to jury trial" in informing the defendant of his rights.[7]

Before deciding this question, it is important to emphasize that the interest of finality is to be protected when accepting a guilty plea. With that interest in mind, the best method of informing a defendant of his constitutional rights is to use the language contained in Crim. R. 11(C), stopping after each right and asking the defendant whether he understands the right and knows that he is waiving it by pleading guilty. We strongly recommend such procedure to our trial courts.

However, failure to so proceed will not necessarily invalidate a plea. The underlying purpose, from the defendant's perspective, of Crim. R. 11(C) is to convey to the defendant

---

[7] That portion of the transcript relevant to the appellant's right to trial by jury reads:

"THE COURT: All right. Now, you know that you do have the right to take the witness stand in your own behalf should you desire. Of course, that would be after conferring with your lawyers and you further have the right to not take the witness stand and should you decide not to assume the witness stand, neither the Judge nor the jury has any right whatsoever to hold the mere fact that you don't take the witness stand against you in any way inasmuch as you would be acting fully and completely within your constitutional rights in not taking the witness stand and also bearing in mind the burden which the State has at all times as to proving its case beyond a reasonable doubt.

"Do you understand that?

"THE DEFENDANT: Yes, sir, I do.

"THE COURT: Now, in other words, you do know you are entitled to a completely fair and impartial trial under the law, being represented by your lawyers at all times, you know that, don't you?

"THE DEFENDANT: Yes, sir."

certain information so that he can make a voluntary and intelligent decision whether to plead guilty.

Accordingly, the basis of Crim. R. 11 is to assure that the defendant is informed, and thus enable the judge to determine that the defendant understands that his plea waives his constitutional right to a trial. And, within that general purpose is contained the further provision which would inform the defendant of other rights and incidents of a trial. *Guilty Plea Cases* (1975), 395 Mich. 96, 235 N.W. 2d 132.

In *Guilty Plea Cases, supra,* at page 122, it was stated:

"On appeal the issue is whether it appears on the record that the defendant was informed of such constitutional rights and incidents of a trial as reasonably to warrant the conclusion that he understood what a trial is and that by pleading guilty he was knowingly and voluntarily giving up his right to a trial and such rights and incidents."

Thus, in determining whether a trial court has informed a criminal defendant of his *Boykin* rights, " '[m]atters of reality, and not mere ritual, should be controlling.' " *McCarthy* v. *United States* (1969), 394 U. S. 459, 468, at fn. 20 (citation omitted).

As the Indiana Supreme Court stated:

"[T]he record must provide a sufficient basis for the conclusion 'that defendant was meaningfully informed of the specific rights enumerated in *Boykin.*' * * * The defendant does not have to be advised in the exact language of the constitution to be meaningfully informed." *Laird* v. *State* (Ind. 1979), 385 N.E. 2d 452, 454. See, also, *Guilty Plea Cases, supra; Church* v. *State* (Ala. Crim. App. 1977), 344 So. 2d 1253.

Therefore, we hold that a rote recitation of Crim. R. 11(C) is not required, and failure to use the exact language of the rule is not fatal to the plea. Rather, the focus, upon review, is whether the record shows that the trial court explained or referred to the right in a manner reasonably intelligible to that defendant. To hold otherwise would be to elevate formalistic litany of constitutional rights over the substance of the dialogue between the trial court and the accused. This is something we are unwilling to do.

Applying this standard to the present cause, we hold that the trial court did meaningfully inform the appellant of his

right to a trial by jury. The court informed the appellant that neither judge nor jury could draw any inference if the appellant refused to testify. Immediately after that statement the trial court informed the appellant that he was entitled to a fair and impartial trial under law. In each instance, the defendant was asked if he understood. The defendant, in each instance, responded affirmatively. These statements and answers, taken together, lead us to the conclusion that the appellant was informed of his right to a trial by jury.

Additionally, here the record shows that the trial court in every other respect carried out the mandates of Crim. R. 11(C), both as to the constitutional rights contained in such rule and the non-constitutional rights. Although the trial court may not relieve itself of the requirement of Crim. R. 11(C) by exacting comments or answers by defense counsel as to the defendant's knowledge of his rights, such a colloquy may be looked to in the totality of the matter. Here, the record shows that the trial judge initially ascertained from the defense counsel that the defendant had been advised of his rights by his attorney, as follows:

"MR. RUSSO: If the Court please, at this time the defendant Arnold Ballard is desirous of withdrawing his formerly entered plea of not guilty to the two counts and entering a plea of guilty to murder as specified by the prosecutor.

"THE COURT: And you explained his constitutional rights to him, I am sure.

"MR RUSSO: Yes, I have.

"THE COURT: Within your judgment as a lawyer, he understood them, did he not?

"MR RUSSO: I not only explained them to him, but also to his parents and relatives and I am sure, I feel in my heart that he does understand them.

"THE COURT: All right.***"

It is interesting to note that in one of the cases decided in *Guilty Plea Cases, supra,* by the Supreme Court of Michigan, *People* v. *Stephens,* the facts were strikingly similar to the instant cause. In *Stephens,* the defendant was not specifically advised of his right to a jury trial, but he answered affirmatively when asked whether he understood that he would have a right to a trial and that if he declined to testify the prosecutor could

not "raise any inferences of guilt before the jury." On such basis the Supreme Court of Michigan stated, at page 124, that "Stephens, who understood that the prosecutor could not ask a 'jury' to infer guilt from failure to testify, was, it appears on this record, adequately informed of his right to a trial by jury. In advising of *Jaworski* rights,[8] as of other 785.7(1)(d) rights, literal compliance is not required."

In this regard, we are in agreement with the Supreme Court of Michigan that a literal compliance with the wording of the Ohio comparable rule, Crim. R. 11(C)(2), is not required. And we hold that an examination of the record of this plea hearing reasonably leads us to the conclusion that the trial court had informed the defendant of his constitutional rights, including that of a right to trial by jury.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., P. BROWN, SWEENEY, LOCHER and C. BROWN, JJ., concur.

W. BROWN, J., dissents on the principles enunciated in *State* v. *Caudill* (1976), 48 Ohio St. 2d 342, and the dissenting opinion of O'Neill, C. J., in *State* v. *Stewart* (1977), 51 Ohio St. 2d 86, 94.

---

[8] The Michigan Supreme Court had previously held that the failure to advise the defendant of his constitutionally mandated rights of trial by jury, right to confront his accusers, and the right to remain silent, renders the plea constitutionally defective. *People* v. *Jaworski* (1972), 387 Mich. 21, 194 N.W. 2d 868.