**The STATE of Ohio, Appellee,**

v.

**SINGH, Appellant.**

[Cite as *State v. Singh* (2000), 141 Ohio App.3d 137.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 98–L–090.

Decided July 10, 2000.

*Charles E. Coulson,* Lake County Prosecuting Attorney, and *Joseph R. Klammer,* Assistant Prosecuting Attorney, for appellee.

*Morganstern, MacAdams & DeVito Co., L.P.A.,* and *Michael A. Partlow,* for appellant.

---

FORD, Presiding Judge.

This is an appeal from the Lake County Court of Common Pleas. Appellant, Jndbr Jit Singh, appeals the trial court's judgment entry sentencing him to an indeterminate term of incarceration.

Appellant, who was never a citizen of the United States, was indicted by the Lake County Grand Jury on August 24, 1984, on two counts of kidnapping, which constitute aggravated felonies of the first degree, in violation of R.C. 2905.01; one count of rape, in violation of R.C. 2907.02, an aggravated felony of the first degree; and one count of attempted rape, in violation of R.C. 2923.02, an aggravated felony of the second degree. Appellant entered a plea of not guilty and was released on bond. On October 5, 1984, appellant failed to appear for his pretrial and motion hearing, resulting in his bond being forfeited.

On March 3, 1998, appellant entered a written plea of guilty to the crime of attempted rape, which was a lesser included offense to the charge of rape, in violation of R.C. 2907.02. The written plea document stated by entering a plea of guilty, he would waive his right: "To a jury trial," "To confront any witness who testifies against me," "To have compulsory process for obtaining witnesses in may favor," "The right to an attorney," and the right to have an attorney appointed for his defense if he could not afford one. The document further provided that if appellant chose to not plead guilty, then appellee would be required to prove his guilt "beyond a reasonable doubt at a trial in which [he] could not be compelled to testify against [himself]." The plea form also contained a sentence which said that, "The Court has personally informed me of the maximum penalty involved and the crime to which I am pleading is an offense for which I may be incarcerated." The document finally listed the offense he was pleading guilty to, the felonious nature of the crime, and the minimum and maximum sentence he could receive.

After a hearing was held concerning appellant's request to enter a plea of guilty to the offense of attempted rape, the trial court accepted the plea, entered *nolle prosequi* for the other counts in the indictment, and sentenced appellant to serve a term of incarceration of six to fifteen years in the Lorain Correctional Institution, with the minimum sentence being a term of actual incarceration. Appellant was credited with having already served six hundred ninety-nine days

in prison. The court further determined, without objection by either party, that appellant was a sexually oriented offender pursuant to R.C. 2929.13(*l* ). The trial court expressly wrote that it did not find him to be a sexual predator or a habitual sex offender.

Appellant now timely appeals, raising the following assigned errors:

"[1.] The trial court erred, to the prejudice of the appellant, by accepting a guilty plea to one count of attempted rape without ascertaining whether the appellant understood the nature of the charges against him.

"[2.] The trial court erred, to the prejudice of the appellant, by accepting a guilty plea to one count of attempted rape without first fully informing the appellant of his right against self-incrimination pursuant to the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution."

In his first assignment, appellant avers that the trial court committed prejudicial error in accepting his guilty plea because the record clearly indicates that he was not asked if he understood the nature of the charges against him.

█ Crim.R. 11(C) governs the entering of guilty pleas to felony charges. The Ohio Supreme Court has held that "Crim.R. 11(C)(2) requires the judge to personally inform the defendant of the constitutional guarantees he waives by entering a guilty plea." *State v. Nero* (1990), 56 Ohio St.3d 106, 107, 564 N.E.2d 474, 476. Strict compliance with Crim.R. 11(C) is mandatory for the constitutional rights. *State v. Grundy* (Jan. 25, 1991), Trumbull App. No. 89–T–4251, unreported, at 7, 1991 WL 6017. The constitutional rights include the privilege against self-incrimination, the right to a trial by jury, and the right to confront one's accusers. *Boykin v. Alabama* (1969), 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279–280. This Court has previously held that the reasonable doubt standard is a constitutional right and that the trial court must inform a defendant of it. *State v. Higgs* (1997), 123 Ohio App.3d 400, 411–412, 704 N.E.2d 308, 315–316. The Supreme Court of Ohio expanded the number of constitutional rights requiring strict compliance when it concluded that a defendant's right to compulsory process must be added to the list. *State v. Ballard* (1981), 66 Ohio St.2d 473, 478, 20 O.O.3d 397, 400, 423 N.E.2d 115, 118–119.

██ However, the trial court need only substantially comply with the non-constitutional requirements set forth in Crim.R. 11(C). *State v. Stewart* (1977), 51 Ohio St.2d 86, 93, 5 O.O.3d 52, 56, 364 N.E.2d 1163, 1167; *Higgs, supra*, 123 Ohio App.3d at 405–406, 704 N.E.2d at 311–312. "Substantial compliance means that under the totality of the circumstances [a] defendant subjectively understands the implications of his plea and the rights he is waiving," and that he is not prejudiced by such plea. *Nero*, 56 Ohio St.3d at 108, 564 N.E.2d at 476. A

detailed recitation of the elements of the charge is not required under Crim.R. 11(C). *State v. Swift* (1993), 86 Ohio App.3d 407, 412, 621 N.E.2d 513, 516–517. Instead, "[t]he court's determination that the defendant understands the charge can be based on the surrounding circumstances, such as recitations of discussions between the defendant and his attorney." *Id.*

In order for a trial court to determine that a defendant is entering a plea with an understanding of the nature of the charge, the court need not advise him of the elements of the crime or specifically ask him if he understands the charge, so long as the totality of the circumstances indicate that the trial court was warranted in deciding that the defendant did understand the charge. *State v. Rainey* (1982), 3 Ohio App.3d 441, 442, 3 OBR 519, 521, 446 N.E.2d 188, 190. In *Rainey,* the court further stated:

"Where the charge to which a defendant pleads guilty is a lesser included offense of the crime with which he was originally charged, so that the elements of the two crimes are similar, it is not difficult to find circumstances from which the defendant could have drawn his understanding." *Id.*

In the case *sub judice,* appellant's first assignment of error does not invoke the protections afforded to the constitutional rights set forth in Crim.R. 11(C), but rather, must be analyzed in the context of a non-constitutional right requiring substantial compliance. The transcript shows that appellant appeared in court with his attorney and a highly qualified interpreter, although he was able to respond to the judge's questions in English, when entering his plea.

Appellant's trial counsel stated on the record that they had discussed the charge and his rights several times, with and without the interpreter. He also stated that he reviewed the court's written plea form with appellant line by line and that appellant completely understood his rights, the charges, and the potential penalties. Additionally, there is the signed written plea form submitted to the lower court, which outlines his rights, the rights waived by entering a guilty plea, the charge to which he is pleading guilty to, and the potential penalties for the crime. Furthermore, as in *Rainey,* appellant was pleading guilty to a lesser included offense.

Finally, during the plea colloquy, the trial judge personally addressed appellant and dialogued with him in a manner informing appellant of the crime he was entering a plea to and the potential penalties that could be imposed. In fact, the extensive plea colloquy as recorded in the transcript provided to this court on appeal shows that the trial judge asked appellant numerous questions during the plea colloquy, and that each and every time appellant quickly and succinctly responded to those questions in English. The transcript does not indicate that appellant ever misunderstood or had difficulties in understanding the statements

and questions of the trial judge. Indeed, the transcript reveals that appellant had a firm grasp of the English language by providing clear answers, articulated at the appropriate time, in a manner demonstrating no confusion, and frequently included a response going beyond a mere "yes" or "no."

Thus, appellant's first assignment of error is without merit, since, based on the totality of the circumstances, it is clear that he entered a plea of guilty to the lesser included offense of attempted rape with an understanding of the charges, the implications of his plea, and the rights he was waving.

In the second assignment of error, appellant contends that the trial court committed prejudicial error by accepting the guilty plea without fully informing him of his right against self-incrimination. Appellant states that the trial judge merely stated on the record that, "You could testify but you need not testify if you desire not to; do you understand that?" Appellant claims that the trial judge erred by failing to inform him that a decision to not testify could not be used against him by the jury.

As indicated in the discussion of appellant's first assignment of error, the right against self-incrimination is a right of constitutional proportion, requiring strict compliance with Crim.R. 11(C). *Boykin*, 395 U.S. at 243, 89 S.Ct. at 1712, 23 L.Ed.2d at 279–280; *Grundy, supra*, unreported, at 7. Although we have previously held that there need not be a rote recitation of Crim.R. 11(C) and the failure to use the exact language of the rule is not fatal to the plea, the trial judge must state to a defendant in the plea colloquy that he or she has a right to refuse to testify against himself or herself as part of the instruction on his or her right against self-incrimination. The failure to do so demonstrates that the trial judge did not strictly comply with Crim.R. 11(C).

In analyzing Crim.R. 11(C), a thorough understanding would reveal that it is constitutionally driven, not rule driven. The basis for this position arises from the holding in *Ballard*, at paragraph two of the syllabus, where the court wrote:

"Failure to use the exact language contained in Crim.R. 11(C), in informing a criminal defendant of his constitutional right to a trial and the constitutional rights related to such trial, including the right to trial by jury, is not grounds for vacating a plea as long as the record shows that the trial court explained these rights in a manner reasonably intelligible to that defendant (*State v. Caudill* [1976], 48 Ohio St.2d 342 [2 O.O.3d 467, 358 N.E.2d 601], modified.) [*sic.*]"

In *Caudill*, the Ohio Supreme Court held that trial courts must "adhere scrupulously" to the language in Crim.R. 11(C). 48 Ohio St.2d at paragraph one of the syllabus. However, the *Ballard* court reassessed its prior position, as reflected by the decision in *Caudill*, by analyzing *Boykin* and the interpretations of it by other states. After re-evaluating its position, the Ohio Supreme Court

concluded that so long as the constitutional rights are explained to a defendant, there is no need to use the exact language of Crim.R. 11(C). *Ballard*, 66 Ohio St.2d at 479, 20 O.O.3d at 400–401, 423 N.E.2d at 119. The court reasoned that the underlying purpose of Crim.R. 11(C) is to assure that a defendant is informed of his constitutional rights. *Id.* at 479–480, 20 O.O.3d at 400–402, 397, 423 N.E.2d at 119–120.

Moreover, if the focus was upon the exact use of the language set forth in the rule, rather than whether a defendant was informed of his rights, then that exercise "would be to elevate formalistic litany of constitutional rights over the substance of the dialogue between the trial court and the accused." *Id.* at 480, 20 O.O.3d at 401–402, 423 N.E.2d at 120. However, the court did suggest that the best method of informing a defendant of his constitutional rights contained in Crim.R. 11(C) would be to use the language contained within the rule, though it need not use such language. *Id.* at 479, 20 O.O.3d at 400–401, 423 N.E.2d at 119.

Thus, after reviewing *Ballard*, it is clear that Crim.R. 11(C) exists as a vehicle by which a defendant's constitutional rights are communicated to him or her. From that perspective, it is apparent that Crim.R. 11(C) is subservient to the constitutional principles it serves to communicate. Accordingly, Crim.R. 11(C) also must be read in a manner in which it complies with constitutional requirements expressed beyond the rule itself.

In this matter, the trial judge's statement, "You could testify but you need not testify if you desire not to * * *," fails to adequately apprise appellant of his constitutional right against self-incrimination. Furthermore, even though the written plea form, signed by appellant, states that he cannot be compelled to testify against himself, that right must be properly explained by the trial judge in the plea colloquy. Accordingly, the trial court failed to comply with Crim.R. 11(C). Thus, appellant's second assignment of error is wellfounded.

For the foregoing reasons, appellant's first assignment of error is without merit and his second assigned error is welltaken. Therefore, the judgment of the Lake County Court of Common Pleas is reversed and this cause is remanded for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

CHRISTLEY and WILLIAM M. O'NEILL, JJ., concur.