**The STATE of Ohio, Appellee,**

**v.**

**MADARIS, Appellant.**

[Cite as *State v. Madaris*, 156 Ohio App.3d 211, 2004-Ohio-653.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–030228.

Decided Feb. 13, 2004.

212

Michael K. Allen, Hamilton County Prosecuting Attorney, and Scott M. Heenan, Assistant Prosecuting Attorney, for appellee.

Jonathan P. Dameron, for appellant.

GORMAN, Judge.

{¶ 1} The defendant-appellant, Cory Madaris, appeals from the judgment of the trial court convicting him, upon a no-contest plea, of one count of aggravated robbery, with an accompanying firearm specification, and two counts of robbery, and sentencing him to consecutive prison terms totaling 18 years. In his two assignments of error, Madaris claims that (1) his plea was involuntary because the trial court incorrectly advised him under Crim.R. 11(C) of his rights against self-incrimination and to confront witnesses; (2) the trial court misinformed him of the length of the additional prison term that would be imposed if he violated post-release-control supervision; and (3) his sentence included multiple punishments for a single act in violation of the Double Jeopardy Clause of the United States Constitution. The assignments of error are not well taken.

## WAIVER OF THE *BOYKIN* RIGHTS

{¶ 2} In his first assignment of error, Madaris contends that the trial court accepted his no-contest plea without adequately informing him of his right against self-incrimination and to confront witnesses. During its Crim.R. 11(C) colloquy, the court asked Madaris, "Do you understand that by pleading you are giving up your right to see the witnesses against you here in open court and the right to have them cross-examined at trial? * * * Do you understand that by pleading you are giving up your right to a trial at which *you cannot be made to testify against yourself?*" (Emphasis added.)

{¶ 3} A rote recitation of those rights contained in Crim.R. 11(C) and mandated by *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, is not required for a valid explanation of a defendant's constitutional rights. See *State v. Ballard* (1981), 66 Ohio St.2d 473, 20 O.O.3d 397, 423 N.E.2d 115, paragraph two of the syllabus. In *State v. DeArmond* (1995), 108 Ohio App.3d 239, 244, 670 N.E.2d 531, we said, "The test is 'whether * * * the trial court explained or referred to the right in a manner reasonably intelligible to [the] defendant.' The trial court's failure to meaningfully inform a defendant that he is waiving these rights by pleading guilty renders the guilty plea constitutionally infirm." (Citations omitted.)

{¶ 4} Relying on the Eleventh Appellate District's decision in *State v. Singh* (2000), 141 Ohio App.3d 137, 750 N.E.2d 598, Madaris argues in this case that the trial court's explanation did not adequately apprise him of his constitutional right against self-incrimination. In *Singh,* the court told the defendant, "You could testify but you need not testify if you desire not to; do you understand that?" Id. at 142, 750 N.E.2d 598. The court of appeals held that this statement failed to articulate that the defendant could not be compelled to testify against himself. See id. at 143, 750 N.E.2d 598.

{¶ 5} Here, the trial court's use of the phrase "made to testify" effectively conveyed the meaning of "compelled to testify," as specified in Crim.R. 11(C)(2)(c). Similarly, the court's use of the phrases "see the witnesses against you here in open court" and "cross-examined" also effectively conveyed the meanings required by the Criminal Rule. We are persuaded that the trial court's choice of words was more understandable for one with a limited education. Madaris also signed a written plea form that contained a statement of each of his *Boykin* rights. When the trial court personally addressed him, Madaris acknowledged that he had read the plea form, discussed it with his attorney, and understood the contents. The transcript of the proceedings at the plea hearing leaves no doubt that the trial court meaningfully informed Madaris, in a manner reasonably intelligible to him, that he was waiving his *Boykin* rights by pleading no contest. Madaris knowingly, intelligently, and understandingly waived these rights.

## POST–RELEASE CONTROL

{¶ 6} In his first assignment of error, in which he contests the voluntariness of his "guilty [sic] pleas," Madaris also argues that the trial court did not correctly advise him of the consequences of violating post-release-control supervision, as mandated by R.C. 2929.19(B)(3). He contends that this was reversible error. The trial court's notification of post-release control was allegedly suspect, first, because its oral summary was a misstatement of the statutory requirements, and,

second, because the statement was made at the plea hearing and not at the sentencing hearing.

{¶ 7} Because Madaris was sentenced to a prison term for a first-degree felony, R.C. 2929.19(B)(3)(c) and (e) required the trial court at the sentencing hearing to "notify" him that he would be subject to post-release control as specified in R.C. 2967.28(F). That section, as amended and effective March 31, 2003, provides for the following notifications: (1) after the defendant leaves prison, the Parole Board will impose five years of post-release-control supervision for conviction of a first-degree felony, and three years of post-release-control supervision for conviction of the two second-degree felonies, see R.C. 2967.28(B); and (2) if the defendant violates a condition or sanction of post-release-control supervision, the Parole Board can return him to prison for up to nine months for each *violation of conditions or sanctions,* not to exceed "one-half of the stated prison term originally imposed by the trial court." (Emphasis added.)

{¶ 8} At the plea hearing, the trial court inquired of Madaris, "Do you understand that if you're sentenced to prison and get out eventually on post-release control and then violate that control that you could be sent back to serve, in *nine-month increments for each offense, whatever remains of your original sentence?*" (Emphasis added.) Madaris replied, "Yes, sir." The trial court made no mention of post-release control at the sentencing hearing.

## What Notice is Required?

{¶ 9} The Ohio Supreme Court has held that a trial court's failure to inform a defendant of the consequences of post-release control at the time of sentencing is not reversible error when the explanation is stated in a written plea form and in the sentencing entry. See *Woods v. Telb* (2000), 89 Ohio St.3d 504, 513, 733 N.E.2d 1103. In *State v. Yanez,* 150 Ohio App.3d 510, 2002-Ohio-7076, 782 N.E.2d 146, at ¶ 37, we observed that, unlike the dictates of Crim.R. 11(C)(2) requiring the trial court to personally address the defendant and to inform him of the rights he is waiving by a guilty or no-contest plea, R.C. 2929.19(B)(3) requires only that the trial court "[n]otify the offender" of post-release-control supervision and the consequences for a violation.

{¶ 10} In *State v. Brown,* 1st Dist. Nos. C–020162, C–021063, and C–020164, 2002-Ohio-5983, 2002 WL 31431803, we clarified how a trial court may notify defendants of post-release control and the consequences of a violation. We observed that notice of post-release control and the consequences for a violation of supervision in the journal entry of conviction was insufficient, as a defendant convicted of an offense in the Hamilton County Court of Common Pleas routinely does not see the journal entry after sentence has been imposed. We concluded, however, that the notification is satisfied if a signed plea agreement contains

language informing the defendant of those requirements in R.C. 2929.19(B)(3)(c) and (e) and if the record also shows that the trial court personally addressed the defendant to ensure that he understood what was contained in the plea agreement concerning post-release control and the consequences for a violation of post-release-control supervision. See id. at ¶ 29.

### Incorrect Oral Summary by the Trial Court

{¶ 11} Madaris correctly argues that the trial court wrongly informed him that he could serve nine months for each "offense" and that the additional prison time would constitute only "whatever remained of your original sentence." Instead, R.C. 2967.28(F)(3) provides that an offender may serve a prison term that does not exceed nine months for each violation of post-release control and that the cumulative punishment for violations may not exceed one-half of his originally imposed sentence.

{¶ 12} The distinction may be important to an offender depending upon the length of his unserved prison term. If, for example, an offender is released from prison after serving all but six months of a ten-year prison term for a first-degree felony, and the Parole Board subsequently finds three violations of the conditions or sanctions of his post-release-control supervision, the trial court's explanation incorrectly assumes that the offender will be released after serving the remaining six months of his original prison term. Instead, the Parole Board may require the offender to serve a prison term of up to twenty-seven months—not six months—for the three post-release-control violations. For additional violations, the Parole Board may impose a prison term of up to five years—one-half of the original sentence.

{¶ 13} Here, Madaris signed a written plea form that correctly explained post-release control in conformity with R.C. 2929.19(B)(3)(c) and (e). In its plea colloquy, before the court accepted Madaris's no-contest plea, Madaris acknowledged in response to the court's questions that he had read the form and discussed it with his counsel, that he understood what was stated in the plea form, and that he had voluntarily signed it. But for the trial court's incorrect oral summary of post-release control during its colloquy with Madaris, the requirements of R.C. 2929.19(B)(3) and 2967.28(F) would have been satisfied. See *State v. Brown*, at ¶ 29.

### Oral Misstatement Where the Sanction is Imposed by Operation of Law

{¶ 14} When imposing consecutive sentences or when imposing a nonminimum sentence on a first offender, the trial court must orally make the required findings and give its reasons for selecting the sentence imposed on the record at the sentencing hearing. See *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165,

793 N.E.2d 473, paragraphs one and two of the syllabus. The trial court's explanation on the record at the sentencing hearing allows the defendant or his counsel to comment and to bring any errors to the attention of the trial court in a timely manner before the court journalizes its findings and imposes sentence. See id. at ¶ 22. By contrast, for first- or second-degree offenders, the post-release-control requirements are imposed by operation of law, independent of any determination or finding of the trial court. See R.C. 2929.19(B)(3)(c). The trial court's duty is simply to notify the defendant that he is subject to supervision by the Parole Board after his release and about the consequences should he violate his supervision. Under the circumstances of this case, and despite the trial court's misstatement, the plea form correctly notified Madaris of the impact of post-release control on his sentence.

{¶ 15} Madaris has failed to demonstrate how he was prejudiced by the trial court's oral misstatement of post-release control at the plea hearing. There is no suggestion in the record that had it not been for the trial court's oral explanation, Madaris would not have entered a no-contest plea. With some 16 years still remaining on his prison term, there is no way of predicting whether he will be released on post-release-control supervision or whether he will violate the conditions or sanctions of his post-release-control supervision. To remand this case to the trial court to readvise Madaris of post-release control would be an exercise in supererogation and a waste of government resources. For these reasons, we conclude that any error by the trial court in this regard was harmless under Crim.R. 52(A).

### Notice of Post–Release Control at the Plea Hearing

{¶ 16} Although, under R.C. 2929.19(B)(3), the trial court should have informed Madaris of post-release control at the sentencing hearing, he was, instead, advised of post-release control at the plea hearing. The Ohio Supreme Court, at the conclusion of its separation-of-powers analysis in *Woods v. Telb*, 89 Ohio St.3d at 513, 733 N.E.2d 1103, indicated that the trial court may give the notification "at sentencing or at the time of a plea hearing."

{¶ 17} But R.C. 2929.19(B)(3) states that sanctions for violations of post-release control are *"part of the sentence."* As part of the sentence, any additional prison term is a fortiori intertwined with the requirements of Crim.R. 11(C)(2)(a), which provides that before the trial court accepts a no-contest plea, it must first "address[ ] the defendant personally" and inform him of the "maximum penalty involved." This language is rooted in considerations involving the voluntariness of the defendant's plea. Therefore, it is more appropriate to notify a defendant of post-release control and the consequences for a longer sentence when the

defendant enters a plea rather than when sentence is imposed. See, e.g., *State v. Johnson*, 11th Dist. No. 2002–L–024, 2004-Ohio-331, 2004 WL 144202, at ¶ 25.

{¶ 18} As Madaris received notice of post-release control when that information was more useful to him, we hold that, absent any prejudice, any error in failing to notify him at the sentencing hearing was also harmless under Crim.R. 52(A). The first assignment of error is overruled.

## ALLIED OFFENSES OF SIMILAR IMPORT

{¶ 19} In his second assignment of error, Madaris contends that the multiple punishments imposed by the trial court for offenses arising out of a single incident violated the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. We have held, under the test requiring comparison of the statutory elements of the offenses in the abstract promulgated in *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, paragraph one of the syllabus, that aggravated robbery with a deadly weapon in violation of R.C. 2911.01(A)(1) and robbery in violation of R.C. 2911.02(A)(2) are not allied offenses of similar import and are not subject to merger, because each offense requires proof of an element that the other does not. See *State v. Berry* (Apr. 14, 2000), 1st Dist. Nos. C–990354, C–990365, and B–9609565, 2000 WL 376409; see, also, *State v. Palmer*, 148 Ohio App.3d 246, 2002-Ohio-3536, 772 N.E.2d 726, at ¶ 9–15.

{¶ 20} Additionally, each of the counts in the indictment against Madaris involved a different victim. In *State v. Rance*, 85 Ohio St.3d at 635, 710 N.E.2d 699, the Supreme Court said, "A legislature, however, may prescribe the imposition of cumulative punishments for crimes that constitute the same offense under *Blockburger* [*v. United States* (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306] without violating the federal protection against double jeopardy or corresponding provisions of a state's constitution." (Citations omitted.)

{¶ 21} In *State v. Jones* (1985), 18 Ohio St.3d 116, 18 OBR 148, 480 N.E.2d 408, the Supreme Court held that multiple punishments for separate deaths in a single automobile accident did not violate the Double Jeopardy Clauses of the United States and Ohio Constitutions because the language of the vehicular homicide statute, "causing the death of another," manifested an intent by the legislature to authorize cumulative punishments for each person killed by the defendant's reckless operation of a vehicle.

{¶ 22} Similarly, in defining the offense of robbery, the legislature intended to authorize separate offenses for separate victims of the robbery by the language in R.C. 2911.02(A)(2), which reads, "Inflict, attempt to inflict, or threaten to inflict physical harm on another." Because the General Assembly intended to authorize cumulative punishments for each person robbed, the

offenses in the two robbery counts of Madaris's indictment, which were separately committed upon separate victims, permitted cumulative punishments for the two robberies under R.C. 2941.25(A). The second assignment of error is overruled.

{¶ 23} Therefore, we affirm the trial court's judgment of conviction.

Judgment affirmed.

WINKLER, P.J., and PAINTER, J., concur.