[Cite as *State v. Bell*, 2015-Ohio-218.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NO. 2014-P-0017** |
| - vs - | : | |
| RYAN NICHOLAS BELL, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2013 CR 0464.

Judgment: Affirmed in part, reversed in part, and remanded.

*Victor Vigluicci*, Portage County Prosecutor, and *Kristina Drnjevich*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Joel A. Holt*, Williams, Welser, Kratcoski & Can, L.L.C., 11 South River Street, Suite A, Kent, OH 44240 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} This delayed appeal is from the Portage County Court of Common Pleas. Appellant Ryan Bell pleaded guilty to one count of rape, a first degree felony, in violation of R.C. 2907.02(A)(1)(b) & 2971.03; and two counts of importuning, a felony of the third degree, in violation of 2907.07(A) & (F)(1)(2). The state and Bell jointly recommended an indefinite prison term of 10 years to life imprisonment for the rape count and 36 months and 24 months for the two importuning counts all of which is to be

served consecutively. The trial court accepted Bell's plea and sentenced Bell according to the joint recommendation. On appeal, Bell argues that the trial court failed to provide necessary findings for imposing consecutive sentences, failed to meaningfully inform Bell of various rights he waived by pleading guilty, and the maximum penalty.

{¶2} On August 2, 2013, a grand jury indicted Bell on three counts of rape, three counts of importuning and one count of pandering sexually oriented matter involving a minor. Eventually, Bell entered into a plea agreement to the previously mentioned offenses and the remaining charges were dismissed. The trial court sentenced Bell and he did not initially appeal his conviction. Bell eventually moved to file a delayed appeal, which this court granted.

{¶3} As his first assignment, Bell asserts:

{¶4} "The trial court failed to make the statutory findings required by R.C. 2929.14(C)(4) prior to imposing consecutive sentences and accordingly, Mr. Bell's sentence is contrary to law and must be vacated."

{¶5} At oral argument, the state conceded the first assignment has merit. Therefore, it will only be addressed briefly.

{¶6} Although the trial court imposed the jointly recommended sentence, Bell claims the trial court still could not impose that sentence without first making the statutorily required findings for imposing consecutive sentences. Thus, the issue is whether the trial court must make the statutory findings for imposing consecutive sentences when a defendant and the state jointly recommend consecutive sentences.

2

**{¶7}** We no longer utilize the test adopted in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912 in reviewing felony sentences; rather, R.C. 2953.08(G)(2) provides our standard of review. *State v. Long*, 11th Dist. Lake No. 2013-L-102, 2014-Ohio-4416, ¶71. Under that standard, as it is pertinent to this case, we will reverse a felony sentence if we find clear and convincing evidence that the sentence is *contrary to law*. R.C. 2953.08(G)(2)(b). R.C. 2929.14(C)(4), the statute governing consecutive sentences, provides:

**{¶8}** "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

**{¶9}** "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

**{¶10}** "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶11} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

{¶12} R.C. 2953.08(D)(1) provides in pertinent part that "a sentence imposed upon a defendant is not subject to review * * * if the sentence is *authorized by law*, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." (Emphasis added.) However, because "a sentence is only authorized by law if it comports with all mandatory sentencing provisions[,]" this court and the Ohio Supreme Court have held that an agreed sentence between the state and the defendant does not relieve the trial court of its obligation to make the statutorily required findings to impose consecutive sentences. *State v. McFarland*, 11th Dist. Lake No. 2013-L-061, 2014-Ohio-2883, ¶13-14, quoting *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶19-22.

{¶13} The Underwood court explained:

{¶14} "Several courts of appeals have held that a sentence is authorized by law within the meaning of the statute simply if the sentence falls within the statutory range for the offense. *State v. Sawyer*, 183 Ohio App.3d 65, 2009-Ohio-3097, 915 N.E.2d 715, ¶ 70; *State v. Bristow* (Jan. 29, 1999), 3d Dist. No. 3-98-21, 1999 Ohio App. LEXIS 941, 1999 WL 84868, *3; *State v. Jackson*, 8th Dist. No. 86506, 2006-Ohio-3165, ¶ 49; *State v. Henderson* (Sept. 27, 1999), 12th Dist. No. CA99-01-002, 1999 Ohio App. LEXIS 4597, 1999 WL 761002, *2.

{¶15} "We do not agree with such a narrow interpretation of 'authorized by law.' Adopting this reasoning would mean that jointly recommended sentences imposed

4

within the statutory range but missing mandatory provisions, such as postrelease control (R.C. 2929.19(B)(3)(c)) or consecutive sentences (R.C. 2929.14(D) and (E)), would be unreviewable. Our recent cases illustrate that sentences that do not comport with mandatory provisions are subject to total resentencing. See, e.g., *State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, ¶ 11. Nor can agreement to such sentences insulate them from appellate review, for they are not authorized by law. We hold that a sentence is 'authorized by law' and is not appealable within the meaning of R.C. 2953.08(D)(1) only if it comports with all mandatory sentencing provisions. A trial court does not have the discretion to exercise jurisdiction in a manner that ignores mandatory statutory provisions. See *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶ 27 ('Every judge has a duty to impose lawful sentences')."

**{¶16}** Consequently, because even in the context of a jointly recommended consecutive sentence, a trial court is required to make the statutory findings, the first assignment has merit.

**{¶17}** As to the second assignment, Bell asserts:

**{¶18}** "The trial court failed to adhere to the requirements of Crim.R. 11(C) and Ohio law during Mr. Bell's sentencing hearing, and accordingly, Mr. Bell's guilty plea was not made knowingly, intelligently and voluntarily and must be vacated."

**{¶19}** Within this assignment, Bell argues that the trial court failed to meaningfully inform him of his right to a jury trial, to have the state prove its case beyond a reasonable doubt for each count of the indictment, and the consequences of

5

pleading guilty. The state contends that the totality of the record establishes Bell understood the consequences of and rights waived by pleading guilty.

{¶20} "Crim.R. 11(C)(2) * * * provides the trial court with the various rights that must be discussed with a defendant prior to the acceptance of a guilty plea. Crim.R. 11(C)(2) states:

{¶21} "'(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

{¶22} "'(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

{¶23} "'(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

{¶24} "'(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the right to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.'

{¶25} "Crim.R. 11(C)(2) creates two separate sets of rights that the trial court is required to discuss with a defendant prior to its acceptance of a guilty plea. The first

set addresses constitutional rights; the second set addresses non-constitutional rights. See, e.g., *State v. Lavender*, 11th Dist. No. 2000-L-049, at 10, 2001-Ohio-8790. Ultimately, 'the basis of Crim.R. 11 is to assure that the defendant is informed, and thus enable the judge to determine that the defendant understands that his plea waives his constitutional right to a trial. And, within that general purpose is contained the further provision which would inform the defendant of other rights and incidents of a trial.' *State v. Ballard* (1981), 66 Ohio St.2d 473, 480, 423 N.E.2d 115.

**{¶26}** "On appeal, the issue becomes whether the record demonstrates that the defendant was informed of the relevant constitutional rights and incidents of a trial to warrant the conclusion that he or she understands what a trial is and that a guilty plea represents a knowing and voluntary forfeiture of those rights stemming from a trial. *Id.* Thus, 'a rote recitation of Crim.R. 11(C) is not required and failure to use the exact language of the rule is not fatal to the plea. Rather, the focus, upon review, is whether the record shows that the trial court explained or referred to the right in a manner reasonably intelligible to that defendant.' *Id.* at 480.

**{¶27}** "Crim.R. 11(C)(2)(c) specifically addresses the various constitutional rights that the trial court must discuss with the defendant prior to the acceptance of a guilty plea. These constitutional rights originated from *Boykin v. Alabama* (1969), 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709. In *Boykin*, the United States Supreme Court held that because a defendant's guilty plea waives several constitutional rights, the record on appeal must demonstrate that a defendant is fully informed of such waiver for his or her guilty plea to be considered voluntary and knowing. *Id.* at 242. Therefore, to conform with these constitutional requirements, the trial court must explain to the

defendant that he or she is waiving: (1) the Fifth Amendment privilege against self-incrimination; (2) the right to a trial by jury; (3) the right to confront one's accusers; (4) the right to compulsory process of witnesses; and (5) the right to require the state to prove guilt beyond a reasonable doubt. See, generally, *Boykin* at 243. See, also, *State v. Singh* (2000), 141 Ohio App. 3d 137, 750 N.E.2d 598. 'The court must strictly comply with these requirements, and the failure to strictly comply invalidates a guilty plea.' *Lavender* at 11. Therefore, the failure 'to meaningfully inform' the defendant of one or more constitutional rights contained in Crim.R. 11(C) is plain error requiring reversal. *Ballard* at 480.

{¶28} "The remaining requirements of Crim.R. 11(C) pertain to non-constitutional rights. Unlike the previously stated constitutional rights, which necessitate strict compliance, non-constitutional rights require that the trial court demonstrate substantial compliance. *State v. Nero*, (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474. Initially, the Supreme Court of Ohio required a trial court to 'scrupulously adhere' to these non-constitutional rights, but that rule has since been modified and has evolved so that substantial compliance is sufficient. *State v. Stewart* (1977), 51 Ohio St.2d 86, 364 N.E.2d 1163. See, also, *Nero* at 108 (holding that 'literal compliance with Crim.R. 11 is certainly the preferred practice, but the fact that the trial judge did not do so does not require vacation of the defendant's guilty plea if the reviewing court determines that there was substantial compliance.')

{¶29} "Substantial compliance means, 'that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving.' *Nero* at 108. In other words, the failure to otherwise inform

the defendant of these non-constitutional rights may not be reversible error if the reviewing court determines, upon evaluation of the totality of the circumstances, that the defendant was aware of the consequences of his or her guilty plea with respect to these rights.

{¶30} "In addition, if the trial court fails to substantially comply with Crim.R. 11(C), the defendant must also demonstrate that he or she was prejudiced by this lack of compliance. *State v. Johnson* (1988), 40 Ohio St.3d 130, 134, 532 N.E.2d 1295. See, also, Crim.R. 52(A) and 33(E). The test of prejudice queries whether the plea would have been made despite the trial court's failure to substantially comply with the prerequisites of Crim.R. 11(C)." *State v. Porterfield*, 11th Dist. Trumbull No. 2002-T-0045, 2004-Ohio-520, ¶16-26.

{¶31} First, Bell asserts he was not meaningfully informed of his right to a jury trial because of his confusion as to whether he signed a jury trial waiver form. Bell directs our attention to the following exchange:

{¶32} "THE COURT: Sir, do you understand you do have a right to a trial in this matter either to the Court or to a jury.

{¶33} "THE DEFENDANT: Yes, I do.

{¶34} "THE COURT: Okay. Are you waiving that right today, sir?

{¶35} "THE DEFENDANT: Yeah, I do.

{¶36} "THE COURT: And, sir, did you sign this written Waiver of Right to a Jury Trial?

{¶37} "THE DEFENDANT: No. Did I?

{¶38} "THE COURT: Is that your signature? Did you sign this document?

9

**{¶39}** "THE DEFENDANT: Yeah, I did.

**{¶40}** "THE COURT: Do you understand that's waiving your right to a jury trial?

**{¶41}** "THE DEFENDANT: Yeah.

**{¶42}** "THE COURT: Okay. And you are waiving your right to a jury trial?

**{¶43}** "THE DEFENDANT: Yes."

**{¶44}** Based upon this exchange, Bell's confusion stemmed from whether he signed a particular document waiving his right to a jury trial, rather than his confusion as to the nature of the right. Furthermore, the exchange demonstrates the trial court meaningfully informed Bell of his right to a jury trial and his waiver.

**{¶45}** Next, Bell claims that he was not informed of his right to have the prosecutor prove his guilt beyond a reasonable doubt on *all charges* of his multiple count plea because the trial court did not use the words "on all charges" after explaining that the state is required to prove his guilt beyond a reasonable doubt. The following exchange took place between Bell and the trial court:

**{¶46}** "THE COURT: And, sir, do you understand it is the obligation of the prosecutor's office to prove your guilt beyond a reasonable doubt? Are you waiving that right?

**{¶47}** "THE DEFENDANT: Yes."

**{¶48}** The trial court clearly informed Bell of the burden of proof. While the trial court did not say on "all charges" it also did not limit the explanation to only some of the charges and it is difficult to imagine how this would leave Bell uninformed on the issue particularly when nowhere else in the colloquy did the trial court discuss any other burdens of proof. The trial court fully complied with Crim.R. 11(C) and *Boykin*.

10

{¶49} Alternatively, even if the exchange were considered to be ambiguous, Bell has still not shown reversible error. Ambiguity in the colloquy does not demonstrate error if other parts of the record, including the written plea agreement, show the defendant was fully informed of the right at issue. *State v. Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, ¶24. The written plea agreement provides in pertinent part that "I [Bell] understand that at the trial the State of Ohio (Prosecutor) has the burden (obligation) to prove my guilt beyond a reasonable doubt to each and every element of each crime of which I am charged." Thus, even assuming the colloquy was ambiguous, this portion of the written plea agreement shows Bell was informed of his right to have the state prove his guilty beyond a reasonable doubt on every element of every charge.

{¶50} Next, Bell claims, without any further elaboration, that the trial court failed to meaningfully inform him of his other constitutional rights. This argument is without merit as nothing reveals the explanation of Bell's remaining constitutional rights was insufficient.

{¶51} Last, Bell argues he thought parole was a near certainty after serving 15 years of his sentence when in fact there is no such guarantee of parole after serving 15 years. Thus, Bell argues he did not understand that his maximum punishment is life rather than 15 years. The state contends that the record is ambiguous but that the totality of the record establishes Bell understood the maximum penalty.

{¶52} At one point in the colloquy, the trial court explicitly informed Bell that his maximum punishment was life. Specifically, the trial court asked:

11

{¶53} "THE COURT: Do you understand the Rape charge may bring with it a prison term – an indefinite prison term of ten years to life in prison; * * *?

{¶54} "THE DEFENDANT: Yes, ma'am."

{¶55} Moreover, earlier the following exchange took place between the trial court and Bell after the plea agreement was read into the record:

{¶56} "THE COURT: Mr. Bell, I saw you going over [the plea agreement] with your attorney while [the prosecutor] was reading that into the record. Is that your understanding of the agreement?

{¶57} "THE DEFENDANT: Yes.

{¶58} "THE COURT: Okay.

{¶59} "THE DEFENDANT: So fifteen years and then I can go for parole?

{¶60} "THE COURT: You're eligible.

{¶61} "THE DEFENDANT: I'm eligible.

{¶62} "THE COURT: It's up to the parole board. Do you understand that?

{¶63} "THE DEFENDANT: Now that's eligible for, no fighting or anything like that?

{¶64} "THE COURT: Do you want to explain it to him?"

{¶65} The first exchange shows Bell was told that the sentence had the potential for life which in anyone's mind is the greatest of all the sentences.

{¶66} The second exchange is nevertheless relied upon to argue Bell's functional understanding of the maximum penalty was 15 years because the trial court perceived confusion on his part.

{¶67} The exchange however does not demonstrate confusion. Bell did not say that in 15 years he is going to be released. Instead, he asked "so 15 years and then I can go for parole?" That question although laconic demonstrates that he knew he would serve a minimum of 15 years before he could even "go" for parole. Thereafter, the court explained he is eligible for parole in 15 years. Eligibility does not however mean automatic release. Thereafter, the trial court explained it is up to the parole board indicating further that parole is anything but automatic. Bell followed with repeating that 15 years provides him with eligibility and that his release would be at least in part a function of his future conduct again demonstrating that parole in 15 years is anything but automatic. Accordingly, the trial court fulfilled its responsibility of informing Bell of his maximum sentence.

{¶68} Alternatively, even if the colloquy were construed as ambiguous, the written plea agreement cures that ambiguity as it explained that the decision to grant parole would be left up to the discretion of the parole board. Therefore, Bell understood that the maximum sentence is life. The second assignment of error is without merit.

{¶69} The judgment of the Portage County Court of Common Pleas is affirmed in part, reversed in part, and we remand for further proceedings.


TIMOTHY P. CANNON, P.J.,

DIANE V. GRENDELL, J.,

concur.

13