{¶ 36} I write separately for two reasons: first, to explain more fully the standard of review our court is to use when we review a decision to deny a motion to dismiss. State v.Cochenour, ante, which the majority opinion cites, states that "a reviewing court must accord due deference to a trial court's findings of fact." Cochenour, in turn cites to State v. Metz,
ante, which explains the basis upon which a reviewing court defers to the trial court's findings of fact: the reviewing court must find they are "supported by competent, credible evidence."
 {¶ 37} Here, the majority opinion, while not providing this explanation, in fact, proceeded to review the evidence implicitly under that standard. I therefore agree with the majority in affirming the trial court's ruling on the motion to dismiss.
 {¶ 38} However, I respectfully dissent on the second assignment of error and write to clarify the rights the trial court must advise a defendant of in a plea colloquy and the standard by which we review that advisement. The majority properly notes that we review non-constitutional rights for "substantial compliance" but that a review of constitutional rights is "heightened to a strict compliance analysis."
 {¶ 39} Defendant in the case at bar has argued that the plea colloquy was flawed because he was not advised of his constitutional right to testify. The majority opinion does not acknowledge that the right to testify is a constitutionally protected right that requires "strict compliance." Rather, the majority states that the court met the strict compliance standard when it advised defendant of the rights specifically enumerated in Crim R. 11, and that the right to testify is not specifically enumerated in Crim R. 11. The majority concludes that the trial court "substantially advised defendant of this right," when the trial court advised defendant that he had a right to remain silent and a right not to be compelled to testify at trial. I disagree with this analysis. I believe that the correct standard is "strict compliance" because the right to testify is constitutionally protected.
 {¶ 40} As this court previously explained: "The U.S. Supreme Court described three federal constitutional rights a defendant must be advised of for a waiver of those rights to be valid": the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers. See,Cleveland v. Wanzo (1998), 129 Ohio App.3d 664, 669,718 N.E.2d 982, citing Boykin v. Alabama (1969) 395 U.S. 238, 243.
 {¶ 41} The Supreme Court of Ohio, however, added a fourth right to this list: the defendant must also be informed of his right to compulsory process of witnesses to testify on his behalf. State v. Ballard (1981), 66 Ohio St.2d 473, 473-477. Noting the addition of this fourth right, the Eleventh District, has described Boykins' list of three constitutionally protected rights as merely "illustrative, not exhaustive" of all constitutional rights a defendant may have and further added a fifth: the right to be proven guilty beyond a reasonable doubt.State v. Mallon (Dec. 17, 1999), Trumbull App. No. 98-T-0032, 1999 Ohio App. LEXIS 6131, *6. citing State v. Higgs (1997),123 Ohio App.3d 400, 407, 704 N.E.2d 308.
 {¶ 42} In the case at bar, defendant properly noted thatRock v. Arkansas, (1987) 483 U.S. 44, 45, recognized the right to testify is also constitutionally protected. In Rock, Justice Blackmun explained the history of this right:
Petitioner's claim that her testimony was impermissibly excluded is bottomed on her constitutional right to testify in her own defense. At this point in the development of our adversary system, it cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense. This, of course, is a change from the historic common-law view, which was that all parties to litigation, including criminal defendants, were disqualified from testifying because of their interest in the outcome of the trial.
* * *
"In sum, decades ago the considered consensus of the English-speaking world came to be that there was no rational justification for prohibiting the sworn testimony of the accused, who above all others may be in a position to meet the prosecution's case." Ferguson v. Georgia, 365 U.S., at 582. * * *
* * *
The right to testify on one's own behalf at a criminal trial has sources in several provision of the Constitution. It is one of the rights that "are essential to due process of law in a fair adversary process." Faretta v. California, 422 U.S. 806, 819, n. 15 (1975). The necessary ingredients of theFourteenth Amendments' guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and to offer testimony: "A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense — a right to his day in court — are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel." (Emphasis added.) In re Oliver,333 U.S. 257, 273 (1948). * * *
See also Ferguson v. Georgia, 365 U.S., at 602 (Clark, J., concurring) (Fourteenth Amendment secures "right of a criminal defendant to choose between silence and testifying in his own behalf"). * * *
The right to testify is also found in the Compulsory Process Clause of the Sixth Amendment, which grants a defendant the right to call "witnesses in his favor," a right that is guaranteed in the criminal courts of the States by the Fourteenth Amendment.Washington v. Texas, 388 U.S. 14, 17-19 (1967). Logically included in the accused's right to call witnesses whose testimony is "material and favorable to his defense," United States v.Valenzuela-Bernal, 458 U.S. 858, 867 (1982), is a right to testify himself, should he decide it is in his favor to do so. In fact, the most important witness for the defense in many criminal cases is the defendant himself. There is no justification today for a rule that denies an accused the opportunity to offer his own testimony. Like the truthfulness of other witnesses, the defendant's veracity, which was the concern behind the original common-law rule, can be tested adequately by cross-examination. See generally Westen, The Compulsory Process Clause, 73 Mich. L.Rev. 71, 119-120 (1974).
Moreover, in Faretta v. California, 422 U.S., at 819, the Court recognized that the Sixth Amendment "grants to the accusedpersonally the right to make his defense. It is the accused, not counsel, who must be `informed of the nature and cause of the accusation,' who must be `confronted with the witnesses against him,' and who must be accorded `compulsory process for obtaining witnesses in his favor.'" (Emphasis added.)
Even more fundamental to a personal defense than the right of self-representation, which was found to be "necessarily implied by the structure of the Amendment," ibid., is an accused's right to present his own version of events in his own words. A defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness. The opportunity to testify is also a necessary corollary to the Fifth Amendment's guarantee against compelled testimony. In Harris v. New York, 401 U.S. 222, 230 (1971), the court stated: "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so." Id. at 225. (* * * Footnotes omitted.)
 {¶ 43} This discussion clarifies that criminal defendants have a right to testify in their own behalf under the Due Process Clause of the Fourteenth Amendment, the Compulsory Process Clause of the Sixth Amendment, and the Fifth Amendment's privilege against self-incrimination. The right to testify, therefore, is constitutionally protected. As a result, our standard of review is strict compliance. "Strict compliance" under the U.S. Constitution does not mean "a rote recitation of the exact language of the rule; rather, the focus on review is whether the `record shows that the judge explained these rights in a manner reasonably intelligible to the defendant.'" Ballard,66 Ohio St.2d 473, paragraph two of the syllabus.
 {¶ 44} Advising a defendant that he has a right to remain silent and that he cannot be compelled to testify, however, is not the same as telling him that he can, of his own accord, choose to tell his side of the events that transpired in the case at hand. The former advises a defendant merely that the state cannot force him to speak at trial.
 {¶ 45} On the other hand, telling a defendant he can testify if he so chooses presents an entirely different set of options. A right to testify, for example, means that a defendant can present himself to the trier-of-fact in order to undermine the state's theory of the case or to dispel any factual mischaracterizations it makes. A right to testify also allows a defendant, by his physical demeanor and tone, to prove his credibility before the jury. Because the right to testify is so materially different from the right to remain silent, a trial court must strictly comply in advising a defendant about that right.
 {¶ 46} In the case at bar, even though the trial court was not required to state verbatim "you have a right to testify at trial," it, nonetheless, had to be explicit in informing defendant that he had a constitutional right to testify at his trial. A review of the record, however, does not demonstrate that defendant was advised he could testify at his trial if he chose to do so.
 {¶ 47} Erroneously following this relaxed standard of "substantial compliance," the majority asserts that since defendant testified during the hearing on his motion to dismiss for pre-indictment delay, he must have known he could also testify at his trial.
 {¶ 48} Such inferences, however, do not satisfy the strict compliance standard. There is a significant and palpable difference between a hearing on a motion to dismiss and an actual trial. If a defendant's motion to dismiss is denied, as it was in the case at bar, the defendant does not face the possibility of imprisonment. Imprisonment is virtually certain, on the other hand, when a defendant pleads to a felony. Accordingly, "what is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Boykin,
243-44.
 {¶ 49} In the case at bar, I must thus reject the majority's determination that because defendant testified during the hearing on his motion to dismiss he implicitly waived a constitutional right the U.S. and Ohio Constitutions promise are inviolable unless it is expressly and voluntarily waived. Because defendant was never told he had a right to testify at trial and he never expressly or voluntarily waived that constitutional right, I would vacate his plea and remand for further proceedings.