[Cite as *State v. Turner*, 2024-Ohio-4845.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellant,

v.

KAWAME TURNER,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 BE 0043**

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 19-CR-209

**BEFORE:**
Cheryl L. Waite, Mark A. Hanni, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan*, Belmont County Prosecutor and *Atty. Jacob A. Manning*, Assistant Prosecutor, for Plaintiff-Appellant

*Atty. Rhonda G. Santha*, for Defendant-Appellee

Dated: September 16, 2024

---

---

**WAITE, J.**

**{¶1}** The State of Ohio appeals a September 21, 2023 entry of the Belmont County Court of Common Pleas which granted Appellee Kawame Turner's motion to withdraw his guilty plea. While the state concedes to multiple errors during the plea process, it argues that these errors do not give rise to prejudice, which it contends a defendant must establish. Because the trial court ruled on the motion to withdraw the guilty plea on grounds unrelated to Crim.R. 11, Appellee was not required to establish prejudice. Because the court's decision is supported by the record and the law governing a motion to withdraw a guilty plea, the state's arguments are without merit and the judgment of the trial court is affirmed.

Factual and Procedural History

**{¶2}** The state proffered the statement of facts at the plea hearing and these were uncontested. On May 25, 2020, Bellaire police conducted a controlled drug buy at a McDonald's restaurant involving Appellee and a confidential informant. Although the buy was not video recorded, officers listened to the transaction using some form of audio device. After completion of the buy, officers initiated a traffic stop of the vehicle driven by Appellee, during which officers discovered contraband on Appellee's female passenger. Aspects of the stop were challenged by means of an unsuccessful motion to suppress.

**{¶3}** At the time of Appellee's arrest in this matter, he was serving a term of parole as a result of legal proceedings in Pennsylvania. The details of those proceedings are not in this record. However, following Appellee's indictment in the instant case, this matter proceeded to plea negations which were entirely dedicated to ensuring that Appellee would not be convicted of a criminal offense before April 28, 2020, the date his

Pennsylvania parole was to end. The parties requested and were granted several continuances aimed at avoiding conviction prior to that date, however, the trial court refused to allow the final continuance which would have allowed the parties to reach their goal. Hence, Appellee entered his guilty plea before his term of parole in Pennsylvania terminated.

{¶4} According to Appellee, his first trial counsel did not explain to him the terms of the plea agreement. Instead, counsel directed Appellee to sign the agreement and respond "yes" to all questions asked by the court. Appellee contends he had very little time to learn the terms of his plea agreement, but his counsel assured him that this agreement was a trial tactic to delay the proceedings. He explained to Appellee that he would later withdraw the plea in order to completely delay conviction and avoid complications with his Pennsylvania parole. Appellee's counsel later denied Appellee's allegations regarding counsel's advice.

{¶5} Among the many provisions of the plea agreement, the parties addressed Appellee's parole proceedings and provided that: "if [the] Pennsylvania [Parole Board] revokes [Appellee's] parole prior to sentence and incarcerates him, the State will not oppose that time to be credited to his 5 year sentence. Otherwise, he serves five years for this court starting on the day of sentence." (3/31/21 Plea Agreement, Exh. A.)

{¶6} In addition, the state informed the court that although it normally would encourage the court to reject a no contest plea, under the circumstances and in the spirit of avoiding complications due to the Pennsylvania parole proceedings, it would not object, here. However, despite the fact that the parties agreed in open court that Appellee was

to plead "no contest," the written agreement stated that Appellee was entering a plea of "guilty." Nowhere on this form does it state the phrase "no contest."

{¶7} On April 29, 2021, Appellee successfully completed his Pennsylvania parole. The record reflects some confusion as to effect of the instant proceedings on Appellee's parole term. While a probation officer removed his ankle bracelet, the officer informed him that his Ohio plea would affect his parole status and that additional time may be added to his parole. That same day, Appellee filed a motion to withdraw his plea, as his conversation with his parole officer left him with the understanding that he had been incorrectly advised about the effect his plea would have on his Pennsylvania parole.

{¶8} On June 18, 2021, prior to Appellee's sentencing, the court held a hearing on Appellee's motion to withdraw his guilty plea. Through new counsel, Appellee argued that his original counsel was ineffective for failing to properly research the effect of his plea before the official termination of his out of state parole proceedings. Appellee's new counsel stated:

> [Appellee] thought that because of pushing the plea date out, and not the date of the indictment, [the parole] would go away. He would -- if it was just that he was going to spend the five years and proceed with the proposal [plea agreement], we would [sic] probably wouldn't be here. He's now facing at least 8 to 10 if he has to go back to Pennsylvania.

(6/18/21 Hearing Tr., p. 7.)

{¶9} When read in conjunction with counsel's written motion, it appears that the eight to ten years Appellee's counsel mentions is a combination of the time he must spend

in Ohio, five years, and "the three (3) years and four (4) months left on his Pennsylvania parole *after* he had served his sentence in Ohio." (6/11/21 Motion to Withdraw Plea.) In essence, Appellee argued that his first counsel could easily have discovered the appropriate measures to address the parole issue by simply calling his probation officer, and his first counsel admittedly did not. The trial court determined that Appellee had been appropriately advised of his Pennsylvania proceedings, and denied the motion.

{¶10} On June 28, 2023, a third attorney for Appellee filed what is titled "Defendant's Motion for Reconsideration of Defendant's Motion to Withdraw Plea and Motion to Continue Sentencing." (Emphasis deleted.) A visiting judge was assigned to the matter, due to the vacancy created by the retirement of the original judge.

{¶11} At a motion hearing, the court commenced the proceedings by advising that the judge's concerns were two-fold: (1) the fact that the written plea form stated that Appellee pleaded "guilty" was problematic, given that the parties clearly negotiated and agreed to a no-contest plea, and (2) the fact that the trial court and the prosecutor advised Appellee of the incorrect maximum penalty appeared to have affected the plea's validity.

{¶12} Each of Appellee's prior trial attorneys testified at this hearing, along with Appellee. Appellee's original trial counsel conceded that no mention of the effect of Reagan Tokes on Appellee's sentence was ever made, but claimed the pressure of having to quickly reach a plea agreement limited his discussion with his client to a matter of minutes, and that the entire process was rushed. (8/28/23 Hearing Tr., p. 27.) The state conceded that the form incorrectly stated Appellee was to enter a guilty plea, and that the maximum possible penalty was incorrectly stated at the plea hearing. After the

reconsideration hearing concluded, the court afforded the parties the opportunity to brief the issues on which the court focused during the hearing.

**{¶13}** On September 21, 2023, the court issued its decision granting Appellee's motion to withdraw his plea. Although not argued on appeal, we note that the court's entry permitted Appellee to withdraw his plea on all counts in the agreement, rejecting the state's argument that, at best, the plea should be vacated only as to the counts affected by the Reagan Tokes Act. The court rationalized that the maximum possible penalty involved all counts in the complaint, and rejected the state's argument.

**{¶14}** On October 20, 2023, the state filed a motion for leave to appeal, as a trial court's decision on a motion to withdraw a plea only provides the state with a right to a discretionary appeal. We granted the motion and appointed Appellee counsel. Despite the fact that the trial court ruled on a Crim.R. 32.1 motion to withdraw a plea, both parties raise and address the matter by way of a Crim.R. 11 analysis. While similar, the applicable laws are not interchangeable, thus leading to a certain amount of confusion on appeal.

ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT THE PLEA WAS INVALIDATED WHEN THE TRIAL COURT HAD FAILED TO ADVISE THE DEFENDANT OF THE MAXIMUM SENTENCE INVOLVED.

ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO CONSIDER WHETHER THE DEFENDANT WAS PREJUDICED BY THE SUPPOSED FAILURE TO ADVISE THE DEFENDANT OF THE MAXIMUM SENTENCE INVOLVED.

**{¶15}** The state focuses its arguments on Crim.R. 11(C), despite the fact that the trial court appears to have permitted Appellee to withdraw his plea pursuant to Crim.R. 32.1. This is an important distinction, because it is the state which must make a showing of prejudice, not the defendant, in applying Crim.R. 32.1.

**{¶16}** "The underlying purpose of Crim.R. 11(C) is to convey certain information to a defendant so that he or she can make a voluntary and intelligent decision regarding whether to plead guilty." *State v. Beck*, 2024-Ohio-578, ¶ 22 (8th Dist.) citing *State v. Ballard*, 66 Ohio St.2d 473, 479-480 (1981).

**{¶17}** The state argues that Crim.R. 11 only requires a court to determine if the defendant understands the maximum penalty. It does not require the court to specifically advise the defendant of the maximum penalty. The state complains that Appellee's only concern in his original motion was related to his Pennsylvania parole proceedings. He never mentioned he was confused about the maximum possible penalty he was facing.

**{¶18}** The state next contends that Crim.R 11 requires a showing of prejudice on Appellee's part. The state provides a lengthy analysis of whether prejudice may be assumed in this case. Because the matter was decided under Crim.R. 32.1, however, this argument is irrelevant.

**{¶19}** Contrary to the state's arguments, prejudice may be a consideration, but is not determinative, in this matter. The court entered judgment on Appellee's motion to withdraw his plea, triggering a review of the factors set forth in *State v. Xie*, 62 Ohio St.3d 521 (1992). While the list is not exhaustive, we review these requests using the following factors: (1) whether the state will be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel; (3) the extent of the Crim.R. 11 plea hearing; (4) whether the defendant understood the nature of the charges and potential sentences; (5) the extent of the hearing on the motion to withdraw; (6) whether the trial court gave full and fair consideration to the motion; (7) whether the timing of the motion was reasonable; (8) the reasons for the motion; and (9) whether the accused was perhaps not guilty or had a complete defense to the charge. *State v. Scott*, 2008-Ohio-5043, ¶ 13 (7th Dist.).

**{¶20}** A ruling on a presentence motion to withdraw a plea is within the sound discretion of the trial court. *State v. Boyer*, 2024-Ohio-1319, ¶ 9 (7th Dist.), citing *State v. Cuthbertson*, 139 Ohio App.3d 895, 898 (2000). An abuse of discretion is more than an error of judgment; it implies a decision that is unreasonable, arbitrary, or unconscionable. *Xie* at 528. "[U]nless it is shown that the trial court acted unjustly or unfairly, there is no abuse of discretion." *Id.* at 526. A presentence motion to withdraw a plea shall be freely and liberally granted, however, the trial court must determine "whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Xie* at 527. It is noted that, "a defendant does not have an absolute right to withdraw a plea prior to sentencing." *Id.*

**{¶21}** In reviewing the court's comments at the hearing and its judgment entry, it is apparent in the record that the court's decision is supported by this record.

Case No. 23 BE 0043

*State's Prejudice*

**{¶22}** Other than the inconvenience of proceeding to trial, there is no evidence of prejudice to the state. While it appears one witness may have passed away, the evidence suggests both that this witness would mostly favor the defense and that the witness died even before the plea agreement was entered. Thus, this factor weighs in favor of Appellee.

*Trial Counsel Representation*

**{¶23}** The record reveals there were strong concerns related to the effectiveness of Appellee's first counsel. In fact, Appellee's second counsel testified that "quite frankly, at the time [of the original motion to withdraw], I was thinking [Appellee] may have something actionable against [his first counsel]." (8/28/23 Motion Hearing, p. 10.)

**{¶24}** At the hearing on his motion to withdraw, concerns were raised regarding the amount of time this counsel spent discussing the plea with Appellee. Counsel himself acknowledged that "we spent several minutes discussing [the plea]. But there was a lot of pressure on us, because the Plea Agreement had to be entered." (8/28/23 Motion Hearing, p. 27.)

**{¶25}** During Appellee's testimony, he stated he engaged in the following conversation with his counsel:

Q. Did you discuss entering a no-contest plea with [first counsel]?

A. No, I did not.

Q. Did he explain to you what a no-contest plea was?

A. No. [First counsel] kept peeking his head out of that door and then they summoned me into the Court and he showed me that plea. He didn't explain nothing to me.

Q. Had he explained the plea offer made by the state prior to that morning with you?

A. No. And he was saying that the bigger felonies would have been thrown out and he would have got me drug court or, you know, something like for the F5, I think, which was the possession, which I didn't possess.

Q. All right. Now, you went through and a plea was entered; is that right?

Q. Did the judge ask you questions?

A. Yes. But [first counsel], when I seen the five years, I asked him, like, what -- you know, he was like just sign it, say "yes" to everything and I'll withdraw it.

Q. When you say he said he'll withdraw it, what did you take that to mean?

A. That just sign it -- because he knew my kids. I had three --- I got three sons. He knew they were with the babysitter. He said, "Sign it, and you won't go to jail or trial today; you get to go home and come back for sentencing." He said "Sign it and I will withdraw it."

(8/28/23 Motion Hearing, p. 76.) All parties seemed to agree that the pace of the plea proceedings was so rushed it resulted in erroneous information related to the most important aspect of the plea, the no contest aspect and the maximum possible penalty. As such, this factor also weighs in favor of Appellee.

*Plea Hearing*

**{¶26}** A review of the plea hearing overall demonstrates compliance with Crim.R. 11, however, the trial court and the prosecutor incorrectly advised Appellee as to his possible maximum sentence. In addition, the notation of "guilty plea" on the written plea form contradicted the parties' clear agreement that Appellee was to enter a no contest plea.

**{¶27}** As conceded by the state, the trial court informed Appellee that his maximum possible sentence was eight years. The state did correct the trial court on two occasions, first to clarify Appellee's sentence on one of the offenses, and second, to clarify that the maximum possible sentence should include the possible consecutive nature of the sentences.

**{¶28}** While the prosecutor at one point did remark, "Judge, as to Paragraph two of the document, it reads that the five-year sentence is actually 5 to 7 and a half years, given the Reagan Tokes law," this correction applied only to one count of Appellee's sentence. (3/31/21 Plea Hearing, p. 21.) There was no advisement that the sentences on Appellee's remaining offenses were also subject to Reagan Tokes. Hence, the state's comment did not completely correct the error. In fact, the error was compounded a few moments later when the state specified that the total maximum possible sentence was twelve years, not taking into account the Reagan Tokes Act, but referring to the

consecutive nature of the sentence. (3/31/21 Plea Hearing, p. 23.) The prosecutor conceded at the reconsideration hearing that he did not take the Reagan Tokes Act into consideration when making this correction.

{¶29} For clarity, we note that the state's calculation of the maximum sentence was as follows: eight years on count one, three years on count two, and one year on count three, for a total of twelve years. This also appears incorrect, as application of Reagan Tokes would result in a sentence of five to seven and one half years in prison on count one, not eight years. Accordingly, this factor weighs in favor of Appellee.

*Did Defendant Understand Nature of Charges and Potential Sentence?*

{¶30} While Appellee stated for the record that he understood the agreement, the parties all admitted that the process was very rushed, leaving Appellee only minutes to review and understand the plea. His first counsel admitted that the parties were under pressure to reach a rapid decision. Further, it appears clear from the record that aspects of both the written plea agreement (no mention of the no contest plea) and the plea hearing (maximum possible sentence) were faulty. Thus, this factor also weighs in favor of Appellee.

*The Extent of the Motion to Withdraw Hearing*

*Did Trial Court Give Full Consideration of the Motion?*

{¶31} While the court may have given complete consideration to the parole issue during the initial motion hearing, it is apparent that the court did not review all of the *Xie* factors at the time, as it did not address the admitted errors in the type of plea being entered or as to the maximum possible penalty. No testimony was taken during the initial motion hearing. This factor also weighs in Appellee's favor.

Case No. 23 BE 0043

*Timing of the Motion*

**{¶32}** Each motion was filed prior to sentencing on the matter. Appellee's first motion was filed the day his parole in Pennsylvania was due to terminate and he first learned his plea created a problem with his parole. This factor weighs in Appellee's favor.

*Basis of the Motion*

**{¶33}** Each motion was based on alleged ineffective assistance of counsel and the failure to properly advise Appellee of key aspects of his plea agreement. Hence, these were not based on mere change of heart.

*Complete Defense or Possibility of Innocence*

**{¶34}** While the state attempted to gain a confession from Appellee during the reconsideration hearing, the trial court reminded Appellee that he had a Fifth Amendment right not to incriminate himself. After that reminder, Appellee's third counsel instructed him to not answer the question. Based on the evidence in this record, we cannot glean whether Appellee alleges he has a defense to any or all of the changes.

**{¶35}** Considering this record, the trial court did not err in permitting Appellee to withdraw his guilty plea. Accordingly, the state's first and second assignments of error are without merit and are overruled.

## Conclusion

**{¶36}** While the state concedes multiple errors in the plea process, it argues that Appellee must establish that he was prejudiced by these errors, and that Appellee failed in this regard. Because the court ruled on a presentence motion to withdraw a guilty plea filed pursuant to Crim.R. 32.1 and not grounds related to Crim.R. 11, Appellee was not required to establish prejudice. Appellee demonstrated for the record several grounds on

which to withdraw his plea.  As such, the state's arguments are without merit and the judgment of the trial court is affirmed.

Hanni, J. concurs.

Dickey, J. concurs.

———————————————

For the reasons stated in the Opinion rendered herein, Appellant's assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**